VERLYN COLLINS, an Infant, by ETHELRINE GREGG COLLINS, Her Next Friend, v. JOHN S. LEAHY, Appellant.—125 S. W. (2d) 874.

Division One, March 8, 1939.

*Wayne Ely, William O'Herin* and *Leahy, Walther, Hecker & Ely* for appellant.

*Everett Hullverson* and *Robert L. Aronson* for respondent.

FERGUSON, C.—This is an action for damages for personal injuries which plaintiff sustained when struck by an automobile driven by Ernest L. Compton, colored chauffeur for defendant Leahy. The plaintiff, Verlyn Collins, a colored girl, was ten years of age at the time. The action was brought by her mother, as next friend. The accident occurred about two o'clock P. M., October 31, 1930, on Finney Avenue in the City of St. Louis, near 3704 Finney, where plaintiff resided with her mother. The action was commenced in the Circuit Court of the City of St. Louis, in January, 1931, and tried in December, 1932, when plaintiff had a verdict for $12,500. As a condition for the overruling of defendant's motion for a new trial, the trial court required a *remittitur* of $4000. Thereupon the plaintiff remitted the sum of $5000 and defendant appealed from the judgment for $7500. The St. Louis Court of Appeals reversed the judgment and remanded the cause for a new trial. [Collins v. Leahy (Mo. App.), 102 S. W. (2d) 801.] The cause was again tried in the Circuit Court of the City of St. Louis (in October, 1937) and plaintiff had verdict and judgment for $9000, from which judgment defendant brings this appeal.

Plaintiff's petition alleges that on the date aforesaid "she was a pedestrian in and upon the traveled portion of Finney Avenue . . . when . . . she was struck, knocked down and run over by an automobile owned and being operated by defendant, by and through his agent and servant, as the direct result of the negligence and carelessness of the defendant, his agent and servant" as therein set out. The petition contains eight specific charges of primary negligence and a charge of negligence under the humanitarian rule. All the charges of primary negligence were abandoned and the case was submitted solely under the humanitarian rule. The answer was a general denial and a plea of contributory negligence.

Defendant, as appellant here, assigns error, as follows; Assignments, 1, 2, 3, relate to alleged "misconduct of plaintiff's counsel throughout the trial" and his alleged improper and prejudicial remarks and

statements in the argument of the case; (4) permitting plaintiff's counsel to introduce in evidence, as a part of plaintiff's case, excerpts from the transcript of the testimony of Ernest Compton (defendant's chauffeur) in the first trial of the case, also the alleged admission of incompetent and prejudicial testimony on the part of plaintiff; (5) refusal of the instruction in the nature of a demurrer to the evidence offered by defendant at the close of the whole case; assignments 6 and 7 relate, respectively, to the giving of plaintiff's Instruction 1, and the refusal of a so-called sole cause instruction offered by defendant; and (8) that the "verdict was so excessive as to indicate bias, passion and prejudice."

The character of the assignments requires a review of the evidence relied upon to establish defendant's liability. Finney Avenue runs in a general east and west direction. Spring Avenue comes into Finney from the north and ends there, that is, it does not continue south of Finney, the south side of Finney being continuous and unbroken at this point. Finney Avenue is forty-two feet wide from curb to curb. Spring Street enters Finney 923 feet west of Grand Avenue, a general north and south street. It is approximately 1230 feet from Spring west to Vandeventer. Plaintiff's home (3704 Finney) was on the south side of Finney and west of the point where Spring Avenue would have intersected the south side of Finney had it continued south of Finney. Plaintiff's mother sent her to a grocery store on the west side of Spring Avenue. In going to, and returning from, the store it was necessary, as appears from the situation above described, for her to cross Finney Avenue. As she was crossing Finney upon her return from the store she was struck by an automobile, traveling west on Finney.

Plaintiff testified: "When I came back from the store . . . I walked from the corner (west corner of Spring and Finney) . . . about half way from Spring towards our house where I started to cross the street. I usually did cross that way. I looked both ways before I started to cross the street. . . . I could see west down to Vandeventer and could see east to Grand Avenue. I saw no automobile coming. I looked straight ahead and went walking across the street. I did not see the automobile at any time and heard no horn sound. I don't know how far I got across the street before I was hit. All I can say is, I started across and was hit. I know nothing that happened after I was hit until I was at the hospital. I don't know where that car came from that hit me." Plaintiff's witness Earl Kleineke, a salesman, testified: "On the day this accident happened I came out of a meeting at 1045 North Grand; my car was parked 150 feet west of Grand on the north side of Finney. I got in my automobile and started my engine . . . looked both ways but saw nothing either way . . . and started away from the curb. I had just barely got moving when a big green Lincoln touring car

with a negro man driving it and two colored women sitting with him on the front seat passed me. The negro man had his arm around one of the women and he was sitting at the wheel driving the car. I judge he was a chauffeur. I did not know whose chauffeur he was. I had never seem him before and I did not know either of the colored women in the car with him. The Lincoln car very near struck mine as I started pulling out. It was going, I would say, around 40 or 45 miles an hour . . . I started to follow it west and as I got about 200 feet away from where I started I saw a colored girl step off the curb (north side of Finney) . . . when she stepped off the curb the Lincoln automobile was about 200 feet away from her and was going 40 or 45 miles an hour. She started southwest across the street at an angle. When she got about middle ways of the car track the right front fender of this touring car struck her. The Lincoln car went straight down the middle of the street. I never heard any horn and the colored man driving the car did not slacken the speed nor change his course at all before the accident. He did not swerve it in either direction before it hit her. It swerved after he hit her and jumped up on the curb. It traveled approximately 75 feet after it hit her. The two women got out of the car first and got into the back seat and the chauffeur got out and picked up the little girl and handed her to the two women in the car and backed up and drove away." Plaintiff's mother, Ethelrine Collins testified: "I didn't see the accident. I was in the front of my home. My attention was attracted by the sound of brakes being applied. I went to the window looked out and saw Verlyn lying in the street. She was practically in front of my house. I saw an automobile further west of her. The front part of the automobile was jammed into the curbing. The chauffeur got out and picked her up and put her in the car and drove away. I didn't know whether the chauffeur was by himself and I didn't notice what kind of a car it was. I did not see anybody in the automobile but I saw him pick Verlyn up and put her in the back seat of the car. There was a crowd around the car but I did not see anybody else in it." Plaintiff's expert witness, William J. Heater testified, that a car of the kind involved in the accident could be stopped, under the conditions there existing, as shown by evidence, within 50 feet, if going at 40 miles an hour, and within 55 feet if going at 45 miles an hour. The remaining evidence on the part of the plaintiff, except excerpts from the transcript of the testimony of Ernest Compton (the driver of the automobile which struck plaintiff) given at the former trial, related solely to the nature and extent of the injuries.

It will be observed that to this point plaintiff's evidence does not show either the ownership of the automobile which struck plaintiff or who was the driver thereof, and that no evidence had been adduced imposing liability upon defendant for the alleged negligent

acts of the driver. At the former trial Ernest Compton, a negro chauffeur, in the employ of defendant, at the time of the accident, had been called and testified as a witness on the part of defendant and had testified that he was the driver of the Lincoln automobile which struck plaintiff. Presumably it was also satisfactorily shown at that trial that defendant was the owner of the Lincoln automobile involved. At the former trial Compton had apparently given certain other testimony which plaintiff deemed essential to her case. Having shown no more than that at the time and place alleged plaintiff had been struck, in the manner described, by a Lincoln automobile driven by a negro man, plaintiff then sought to introduce in evidence excerpts from the transcript of the testimony of Ernest Compton, who is not a party to the action, given, as a witness for defendant, at the former trial of the cause and preserved in the bill of exceptions therein. The offer was based upon Section 1714, Revised Statutes 1929, which governs the admission of such evidence and reads as follows: "Whenever any competent evidence shall have been preserved in any bill of exceptions in a cause, the same may be thereafter used in the same manner and with like effect as if such testimony had been preserved in a deposition in said cause, but the party against whom such testimony of any witness may be used shall be permitted to prove any matters contradictory thereof as though such witness were present and testifying in person." Referring to said section this court, en banc, said, in O'Brien v. St. Louis Transit Co., 212 Mo. 59, 110 S. W. 705; "This statute does not give an unconditional right to the parties litigant to read to the jury, or to the court, evidence preserved in the bill of exceptions, but it in express terms restricts that right to the same conditions upon which the depositions are admissible in evidence. That being true, we must ascertain what the latter conditions are, and then apply them in the same manner to the bill of exceptions when an offer is made to read therefrom." Article IV of Chapter 8, Revised Statutes 1929, relates to depositions in "a suit pending in any court in this state" and Section 1780 thereof, prescribes the conditions upon which depositions "may be read and used as evidence in the cause in which they shall have been taken, as if the witnesses were present and examined in open court on the trial thereof," as follows: "First, if the witness resides or is gone out of the state; second, if he be dead; third, if by reason of age, sickness or bodily infirmity he be unable to or cannot safely attend court; fourth, if he reside in a county other than that in which the trial is held, or if he be gone to a greater distance than forty miles from the place of trial without the consent, connivance, or collusion of the party requiring his testimony; fifth, if he be a judge of a court of record, a practicing attorney or physician, and engaged in the discharge of his official or professional duty at the time of the trial." (Italics ours.) Section 1780 also provides: "The facts which would authorize the reading of the deposition may

be established by the testimony of the deposing witness or the certificate of the officer taking the same.'' In this instance such facts are of course not shown by any certificate nor does the testimony of the witness preserved in the bill of exceptions, disclose any of the conditions prescribed by Section 1780. On the contrary the testimony of the witness is to the effect that at the time it was given he was a resident of the City of St. Louis, then residing at 3718 Cook, Apartment A; that he was then forty-two years of age; that he was born in the City of St. Louis, and the implication is that he had continuously resided there. Therefore plaintiff made a showing of facts which she contends sufficiently met the requirements of Sections 1714 and 1780, Revised Statutes 1929, supra, and made the proffered excerpts from the testimony of Compton at the former trial admissible in evidence on the part of plaintiff.

The first trial was in December, 1932, and this trial was in October, 1937. As stated Compton testified at the first trial that he then resided at ''3718 Cook, Apartment A,'' in the City of St. Louis. Plaintiff called J. Edward Gragg, an attorney, who testified that plaintiff's attorney had requested him to ''make a search for Ernest R. Compton'' and pursuant thereto, ''I went to 3718 Cook Avenue . . . sometime last June and did not find him (Compton). Again, at your request, I made a search for him last night. I went to an apartment house at 3718 Cook Avenue, Apartment A, the address which you (plaintiff's attorney) gave me, made inquiry there as to his whereabouts, and was advised by the occupant that he (Compton) had not lived there for a period of two years, and thereafter I went to . . . the adjoining apartment and talked to the janitor . . . and was advised he had not seen him (Compton) for the period of three years and he hadn't lived in the apartment for some two or three years.'' The court overruled defendant's objections that such showing was not sufficient to qualify the transcript of Compton's testimony under the requirements of the statute. Thereupon in support of his exception to the admission in evidence of such transcript defendant introduced the following evidence; that Compton was at that time a resident of the City of St. Louis, residing at 4405c West Belle, and regularly employed as a doorman at the Mayfair Hotel at Eighth and St. Charles Street, in that city; that the Mayfair Hotel was seven blocks from the Court House where the trial was then in progress; that defendant's attorneys had talked with Compton at their office in the City of St. Louis on the previous Friday afternoon (the instant proceedings were had on Monday, October 4, 1937) at which time he was duly served, on behalf of defendant, with a subpoena ''returnable in this court for this trial;'' that defendant's counsel had advised the witnesses subpoenaed on the part of the defendant that they would be called, by telephone, if their testimony was required when the introduction of evidence on the part of defendant was commenced; that

Compton had advised defendant's counsel that he would be at his home and subject to call there by telephone until three o'clock in the afternoon and thereafter he would be on duty at the hotel until twelve o'clock (midnight) and subject to call by telephone at the hotel after three o'clock P. M.; and that neither Compton nor the other witnesses subpoenaed on the part of defendant were present at that time in the court room. Following this showing defendant again objected to the reading, by plaintiff, of excerpts from the transcript of Compton's testimony at the former trial as a part of plaintiff's case and offered "to produce Ernest Compton in this court room within the limit of one hour from this moment, so that Mr. Hullverson (plaintiff's attorney) may use him as a witness, if he wishes, and we may have our privilege of cross-examination." The court asked plaintiff's attorney if he wished to avail himself of the offer to which he replied: "No, I don't." Thereupon the court again overruled defendant's objection and permitted plaintiff's attorney to read from the transcript of Compton's evidence as preserved in the bill of exceptions. Plaintiff's attorney then read to the jury the following excerpts therefrom: "Ernest L. Compton, a witness, being first duly sworn on his oath, testifies on behalf of the defendant, as follows: Q. Will you state your name? A. Ernest L. Compton. Q. Where do you live? A. 3718 Cook, Apartment A. Q. How old are you? A. I will be forty-two my next birthday. Q. Where were you born? A. In St. Louis. Q. By whom are you employed? A. Mr. John S. Leahy."

"Q. Where had you been before the accident? A. Down to the General Tire Store—The General Tire Agency down on Washington and Theresa. Q. What did you do there? A. Got two tire covers. Q. Had you gone any place else from there before you got to the scene of the accident, or did you drive there directly? A. Direct from there to the scene of the accident."

"Q. Are you permitted to use that automobile for your own purposes by Mr. Leahy? A. No, sir. Q. Did he ever permit you to take the car and drive it around? A. No, sir."

"Q. You were going out to Chaminade to get Mr. Leahy's son? A. Yes, sir. Q. Were you instructed by Mr. or Mrs. Leahy to get their son? A. No, by the nurse. Q. Was that a part of your duty? A. Yes, to obey the nurse when they were out of town. Q. They were out of town and you were obeying the nurse? A. Yes, sir."

"Q. There were four-wheel brakes on this car? A. Yes, sir. Q. In good condition? A. Yes, sir."

"Q. Can you tell us how that street was made at the time? A. The car tracks were paved and on each side of the street was dirt. Q. At about what rate of speed were you driving? A. I had been going twenty-five miles an hour all the way down the street—twenty to twenty-five miles an hour. Q. That was a brick street you were

going down? A. Cobblestone between the car tracks. Q. Whether cobblestone or brick, it is a good surface on which to stop? A. Cobblestone is a little harder than asphalt to stop on. Q. It is? A. It gives you bumpy footing. Q. It grips better, doesn't it? A. I never found it that way. Q. You were not driving as near the curb as you could, you were driving in the center of the street? A. I was driving in the west-bound car track—straddle of the rail. Q. There were no other automobiles parked any place along there? A. None besides up at Grand Avenue.''

''Q. You mean to say that going twenty miles an hour there is somebody in front of you ten feet ahead you would run into them? A. No, I do as I did here with her. Q. Going at that speed you can't stop in ten feet? A. No, sir. Q. How far do you think it would take to stop going at that rate of speed. A. Anywhere from twenty to forty feet under those conditions.''

Most of the foregoing excerpts were from the cross-examination of the witness by plaintiff's counsel on the former trial. We have omitted defendant's objections to the several questions and answers and the action of the court in overruling them.

Plaintiff next introduced in evidence the following excerpt from the transcript of the testimony of the defendant Leahy at the former trial: ''Q. How long has this chauffeur Compton been in your employ? A. About three and a half years.'' The foregoing is all the evidence on the part of plaintiff, except medical and other testimony relating solely to the injuries.

As appears from defendant's evidence, Chaminade, mentioned in one of the excerpts from Compton's testimony, refers to Chaminade College in St. Louis County, southwest of the City of St. Louis. Omitting all testimony relative to injuries we undertake a brief summary of the evidence on the part of the defendant. Defendant's son Crawford Leahy testified that during the school year of 1930-31 he was a boarding student at Chaminade College. In connection with his testimony a rule of the college was introduced in evidence to the effect that week-end visits by the students were limited to the period between eight o'clock A. M. Saturday and eight-thirty P. M., Sunday and that ''all appointments of doctors and dentists must be made to conform to these time limits.'' The witness further testified that he never went home except on Saturday morning and that Ernest Compton never at any time called for him at the college and took him to his home or took him back to the college after the week-end but that another chauffeur employed by his father always took him back and forth. It is admitted that the accident involved occurred on Friday. The nurse in the Leahy home, referred to in one of the excerpts from the testimony of Compton read in evidence by the plaintiff, testified that on the date in question the defendant and Mrs. Leahy were out of the city; that she did not at any time give Compton any instruc-

tions to go to Chaminade College and get Crawford Leahy and that, at the time of the accident, Compton lived over a store within a block of Finney Avenue and on the west side of Vandeventer. The defendant testified that on the date of the accident he and Mrs. Leahy were in Washington, D. C.; that he owned a seven passenger Lincoln automobile; that there was a spare tire on each running board of the car but those tires never had any tire covers over them and each was mounted with a mirror; that he never sent Compton after any tire covers; that Compton had no authority to take defendant's car out except on orders; and that while his son Crawford was a student in Chaminade College he came home only on Saturday mornings and returned on Sunday evenings. The witness had no recollection of his son ever "coming in" on any other days.

We first consider appellant's assignment numbered 4 relating to the admission in evidence, on the part of plaintiff, of the excerpts from the transcript of the testimony of Compton given, on behalf of defendant, at the former trial. As mentioned Compton was not a party defendant and the admission of his testimony cannot be justified on the ground that it was an admission against interest. Pursuant to Section 1714, Revised Statutes 1929, supra, it was incumbent upon plaintiff, as a condition precedent to the admission of the excerpts from the transcript of Compton's testimony, to first show one or more of the conditions prescribed by Section 1780, Revised Statutes 1929, supra, specifying when a deposition, taken in a pending suit, "may be read and used as evidence in the cause." No showing was attempted that the witness was dead, or "by reason of age, sickness or bodily infirmity" was "unable to" or could not "safely attend court," or that he was "a judge of a court of record, a practicing attorney or physician" at the time "engaged in the discharge of his official or professional duty." Therefore the second, third and fifth conditions of Section 1780 are eliminated from consideration, leaving for determination, whether, under the evidence, offered in that connection, a showing was made which would authorize the admission of the testimony on either the first or fourth conditions specified in said section. The first condition permits the reading of such testimony in evidence "if the witness resides or is gone out of the state," and the fourth condition, "if he reside in a county other than that in which the trial is held, or if he be gone to a greater distance than forty miles from the place of trial without the consent, connivance, or collusion of the party requiring his testimony." Disregarding, for the present, defendant's positive evidence that Compton was a resident of the City of St. Louis, regularly employed within seven blocks of the place of trial, and was under subpoena as a witness therein and subject to call, does the evidence contained in the transcript and that offered by plaintiff constitute substantial evidence to support a finding making the testimony admissible on either the first or fourth

grounds specified in said Section 1780. As we have noted, in his testimony at the first trial Compton stated he was born in the City of St. Louis and resided there, giving his then home address. The implication is that he had continuously resided in the City of St. Louis. The only evidence offered by plaintiff as tending to qualify the transcript, under the requirements of either the first or fourth provision of Section 1780, was that plaintiff's agent had called at the address at which Compton had resided in the City of St. Louis at the time of the first trial, more than four and a half years prior thereto, and had there been told, by the janitor, that Compton had not lived there for "two or three years." No further or other inquiry, investigation or effort was made to ascertain his whereabouts. Plaintiff assumes the attitude of having no information whatsoever about Compton. At the time he gave his testimony in the first trial he testified he was then in defendant's employ but plaintiff made no inquiry of defendant as to Compton's whereabouts though, having called Compton as a witness in the first trial, defendant might well be assumed to have some knowledge thereof. The mere showing, and no more, that Compton did not reside at the apartment in the City of St. Louis where he had resided more than four and a half years before hardly, we think, amounts to a substantial showing that he was, at the time plaintiff sought to read the excerpts from the transcript of his testimony in evidence, either a nonresident of, or gone out of, the State of Missouri, or a resident of a county other than that in which the trial was being held, or that he was "gone to a greater distance than forty miles from the place of trial," etc., as required by the statute. Nor can defendant's positive and affirmative showing be disregarded in ruling the evidence adduced in that connection.

The rule that the party offering such testimony in evidence must show the existence of some one of the conditions named in Section 1780, supra, as a prerequisite to its admission is discussed and enforced in the following cases. [O'Brien v. St. Louis Transit Co. (En Banc), 212 Mo. 59, 110 S. W. 705; Heinbach v. Heinbach, 262 Mo. 69, 170 S. W. 1143; State v. Miller, 263 Mo. 326, 335, 172 S. W. 385, 388; Gaty v. United Rys. Co. (Mo.), 251 S. W. 61; Francis v. Willits (Mo. App.), 30 S. W. (2d) 203; Sculley v. Rolwing (Mo. App.), 88 S. W. (2d) 394; Kurzweil v. Enyart (Mo. App.), 54 S. W. (2d) 464.] Such showing may be made by the testimony of the witness contained in the transcript or deposition itself (Sec. 1780, supra, Mayne v. Kansas City Rys. Co., 287 Mo. 235, 229 S. W. 386), or by the testimony of other witnesses to facts bringing the testimony within the requirements of the statute. From the evidence offered herein pertaining to the admissiblity of the Compton testimony the court was called upon to determine, as a question of fact, whether the proferred testimony came within any of the five classes named in the statute. The trial court determined that it did, and, we think, er-

roneously, because, as we have pointed out, there was no substantial evidence introduced to support such finding.

██ Plaintiff, respondent, says the showing was sufficient to make the testimony admissible under Section 1804, Revised Statutes 1929, which is a part of Article VI, Chapter 8, Revised Statutes 1929, relating to the perpetuation of testimony. That article provides a method of taking the depositions of witnesses "to perpetuate testimony . . . whether the person desiring the taking of the same is a party, or expects to be a party, to ·a suit pending, or about to be commenced, or not, in any court of this state, and the object is to perpetuate the contents of any lost or other instrument of writing, or the remembrance of any fact, matter or thing necessary to the recovery, security or defense of any estate or property, real or personal, or any interest therein, or any other personal right." (Sec. 1789). It is then provided by Section 1804, of said article, to which plaintiff directs our attention, that depositions taken in conformity "to the provisions" of the article, "or duly certified copies of the record of such depositions, may be used and read as evidence in any cause or judicial proceeding to which they relate, in favor of any parties thereto," etc.; "First, if the deponent is dead; second, if he be unable to give testimony, by reason of insanity or imbecility of mind; third, if he be rendered incompetent, by judgment of law; fourth, if he be removed, so that his testimony cannot be obtained." Plaintiff claims that the admission of the transcript in question was proper under the fourth provision, that is, that it was sufficiently shown that the witness Compton had "removed," so that his testimony could not "be obtained." Article VI, Chapter 8, relating to the perpetuation of testimony, as therein provided, is complete in itself and Section 1804 thereof relates solely to testimony taken and preserved in conformity to the provisions of that article and is not applicable to the situation here presented. As heretofore noted the statute (Sec. 1714, R. S. 1929) which authorizes "evidence . . . preserved in any bill of exceptions in a cause" to be thereafter used "in the same manner and with like effect as if such testimony had been preserved in a deposition in said cause" clearly refers to the conditions prescribed by Section 1780, Revised Statutes 1929, supra, upon which depositions taken in a pending suit, in conformity with the provision therefor by Article IV, Chapter 8, Revised Statutes 1929, "may be read and used in evidence in the cause." This view is sustained by the appellate decisions discussing and applying Section 1714 and the admissibility of evidence "preserved in any ·bill of exceptions in a cause." [See cases cited supra.] We might, however, add that if plaintiff's suggestion that Section 1804 is applicable be allowed nevertheless the evidence offered by plaintiff does not affirmatively and satisfactorily show that the testimony of the witness was not obtainable and the whole evidence upon the question shows the contrary.

The testimony which the court permitted plaintiff to read in evidence from the transcript of Compton's former testimony was not mere cumulative evidence but the sole evidence as to certain facts necessary to make out a case for plaintiff. Our conclusion on the assignment is that, under the circumstances shown by the record, the testimony was erroneously admitted.

▬ Appellant contends that the evidence on the part of the plaintiff, including the excerpts from the testimony of Compton at the former trial, "fully presented" all the evidence available to support plaintiff's case, that plaintiff's case was not aided by the evidence on the part of the defendant, that no case was made for the jury, that the trial court erred in refusing defendant's demurrer to the evidence at the close of the evidence, and that the judgment should, for that reason, be reversed without remanding the cause for another trial. Specifically appellant's assignment (numbered 5) asserts that "there was no evidence in the record (including the Compton testimony) from which the jury could properly find that defendant's automobile was involved in the accident complained of," and "no evidence at all from which the jury could find that Compton was engaged in the performance of any duty for defendant, or that he was on defendant's business, or that he was using defendant's automobile with knowledge, consent or authority of defendant but to the contrary, the evidence, if it shows Compton was using defendant's automobile at all, shows that he was using it without authority of defendant, that he was not on defendant's business" and was using the automobile solely for his own purposes.

On the first appeal (Mo. App.), 102 S. W. (2d) 801, defendant, the appellant then and now, did not question the sufficiency of the evidence to make a submissible case and we therefore assume that on the first trial evidence was developed tending to show the essential elements which appellant contends are lacking in the present record. At this trial plaintiff produced but one eyewitness of the occurrence (Kleinecke), who testified to the events and circumstances immediately preceeding and attending the striking of plaintiff by the automobile. As appears from the statement of facts set out in the Court of Appeals' opinion, at the former trial two other witnesses, Martha Boyd and Velma Wood, claiming to have seen the occurrence, also testified as to such facts on behalf of plaintiff. None of the evidence adduced at the former trial bearing upon the employment of Compton, the ownership of the automobile, or the authority by which, or the purpose for which, it was at the time being driven by Compton is set out in the statement of facts in the Court of Appeals' opinion, and no question having then been made, by the defendant, as to the sufficiency of the evidence in that respect, we must assume that on the former trial there was evidence tending to show the facts necessary to the making of a submissible case. At the present trial

defendant offered no evidence whatsoever pertaining to the striking of defendant by the automobile. We have set out, supra, the substance and purport of defendant's evidence, omitting only the evidence relative to plaintiff's injuries. We have also set out in full and verbatim the detached excerpts which plaintiff elected to read from the transcript of Compton's former testimony. The other parts of his testimony at the former trial are not in this record. The excerpts read were plucked here and there from his former testimony, mostly from the cross-examination, and in order to connect such excerpts with the facts of the case which they purportedly were intended to show resort must be had to surmise and supposition. As appellant alleges there is no direct evidence in this record that defendant owned the automobile which struck plaintiff. However, defendant as a witness testified that at the time Compton was in his employ as a chauffeur and that at that time he owned a Lincoln automobile. In Compton's testimony introduced by plaintiff he does not say he was at the time driving defendant's automobile but plaintiff apparently takes the position that under all the circumstances in evidence that may properly be inferred as a fact. The evidence shows that defendant's home was at 4944 Lindell Boulevard, at the eastern portion of Forest Park; that it is about twelve blocks east from defendant's home to Theresa and thence two blocks north to Washington. The accident occurred near Spring and Finney, several blocks in a northwesterly direction from Washington and Theresa. Chaminade College is in St. Louis County in a southwesterly direction from defendant's home and also a southwesterly direction from Washington and Theresa. An examination of the map, introduced in evidence, of the City of St. Louis and surrounding territory shows the route to Chaminade College from Washington and Theresa is in a practically direct southwesterly direction. Compton's testimony, in this record, is that prior to the accident he had been to a tire store at Washington and Theresa where he "got two tire covers." There is nothing in the evidence to show that these tire covers were for defendant or for use on defendant's automobile, unless that could be said to be a proper inference from other evidence, and defendant's evidence tends to show that no tire covers were procured for him at that time. That part of Compton's testimony in this record is that from the tire store he drove the several blocks in a northwesterly direction to the point of the accident near Spring and Finney. Plaintiff then introduced an excerpt from the cross-examination of Compton as follows: "Q. You were going out to Chaminade to get Mr. Leahy's son? A. Yes, sir." No connection is shown with his other testimony or any other evidence in the case. Only by surmise can we take the statement as meaning that at the time the automobile struck plaintiff Compton was enroute to Chaminade College to get defendant's son. The next portion of Compton's testimony is that defendant and his wife were out of the city and

that the nurse in the Leahy home had instructed him "to get" defendant's son. Whether he was instructed "to get" the son that day (Friday) or on the next day (Saturday) or when does not appear. Upon examination of the map mentioned it is well nigh inconceivable, or at least difficult of ready explanation, how Compton could, at the time the automobile struck plaintiff, have been enroute to Chaminade College. If so he was pursuing much the same course "Wrong Way" Corrigan followed in taking off for California. Compton was pursuing a northwesterly course enroute, as plaintiff claims, to Chaminade College which was southwest from his starting point. No explanation is made of the diversion in this record. Plaintiff's undisputed testimony was that Compton had two women, with him, in the front seat of the automobile and was embracing one of them as he drove the automobile along Finney immediately before the accident. Plaintiff contends this testimony by her principal witness Kleinecke is disputed by Compton himself. Apparently at the former trial, as we gather from the Court of Appeals' opinion, Compton testified that he was alone in the automobile but that testimony is not in this record. However, as it appears that plaintiff made a submissible case on the first trial, we are not inclined to sustain the contention that appellant, by this assignment, makes, that is, that the evidence in this record, including the detached portions of Compton's former testimony put in evidence by plaintiff, fully presents the available evidence tending to support plaintiff's case, and that same is insufficient to make a case for the jury. Enough is shown, we think, to indicate a reasonable probability that plaintiff can adduce other and further evidence, not in the record of this trial, bearing upon the essential elements of his cause of action. Whether a full presentation of the available evidence, on a retrial would make out a submissible case we cannot of course now determine.

Appellant complains that plaintiff's principal instruction permits the jury to find that Compton was operating the automobile on defendant's behalf, when there was no competent evidence to support such a finding. As the cause is to be remanded that question must await an examination of the evidence on the retrial. Perhaps plaintiff's counsel will see fit, on another trial, to alter the wording of the instruction so as to avoid the criticism which appellant levels at the direction, "if . . . at and prior to the time the said automobile came in contact with plaintiff, she became and was in a position of imminent peril," etc. The use of "at and prior" was criticized in Rytersky v. O'Brine, 335 Mo. 22, 70 S. W. (2d) 538, and see also discussion in separate dissenting opinion of GANTT, J., in Perkins v. Terminal Railroad Assn., 340 Mo. 868, 886, 102 S. W. (2d) 915, 924.

Appellant also assigns as error the refusal of his co-called sole cause instruction. The facts as shown by the testimony of plain-

tiff and the testimony of her witness Kleinecke, which constitute all the evidence to be found in this record as to the striking of plaintiff by the automobile, are not comparable to the facts, in the humanitarian cases, upon which the approved sole cause instruction given therein was based. [Borgstede v. Waldbauer, 337 Mo. 1205, 88 S. W. (2d) 373; Doherty v. St. Louis Butter. Co., 339 Mo. 996, 98 S. W. (2d) 742; Johnston v. Ramming, 340 Mo. 311, 100 S. W. (2d) 466; Kirkham v. Jenkins Music Co., 340 Mo. 911, 104 S. W. (2d) 234; Oliver v. Morgan, (Mo.), 73 S. W. (2d) 993.] Upon a review of the testimony of plaintiff, and that of her witness Kleinecke, supra, we think it will be apparent that the facts appearing in this record do not afford a sufficient basis for the sole cause instruction.

We will not prolong this opinion by setting out and discussing the numerous alleged prejudicial observations, statements, portions of argument to the jury and other alleged prejudicial conduct of plaintiff's attorney, in the course of the trial, which constitutes appellant's assignments 1, 2 and 3. As the cause must be remanded, occasion for such complaint will doubtless not arise on another trial.

For the reason heretofore stated the judgment is reversed and the cause remanded. *Hyde* and *Bradley, CC.,* concur.

PER CURIAM:—The foregoing opinion by FERGUSON, C., is adopted as the opinion of the court. All the judges concur.