ERNEST CASCIARO, RESPONDENT, v. THE GREAT ATLANTIC & PACIFIC TEA COMPANY, A CORPORATION, APPELLANT.—183 S. W. (2d) 833.

St. Louis Court of Appeals. Opinion filed December 5, 1944.

*Orville Richardson* and *Jones, Hocker, Gladney & Grand* for appellant.

364

*Frank E. Doyle* and *Paul D. Clerk* for respondent.

McCULLEN, J.—This action was brought by Ernest Casciaro, as plaintiff, against The Great Atlantic & Pacific Tea Company, a corporation, as defendant, to recover damages for personal injuries alleged to have been sustained by plaintiff on February 26, 1942, as the result of a fall in one of defendant's stores in St. Louis County, Missouri. A trial before the court and a jury resulted in a verdict and judgment in favor of plaintiff and against defendant in the sum of $1000. After an unavailing motion for a new trial defendant duly appealed.

The petition of plaintiff alleged that defendant was the owner and operator of a large grocery store and meat market known as A. & P. Super Market located on the north side of Olive Street Road, a short distance east of North and South Road in St. Louis County, Missouri; that on February 26, 1942, while plaintiff was lawfully in defendant's said place of business as an invitee, and while making a purchase as a customer, he was caused to lose his balance and to fall backwards over boxes of groceries standing on the floor in an aisle of said store and to be thrown violently to the floor, whereby he was seriously and permanently injured.

After stating the nature and extent of his injuries plaintiff alleged that they were directly and proximately caused by the negligence of defendant "in that two boxes of groceries were allowed, suffered, and permitted to collect, accumulate, and remain on the floor of the defendant's said place of business in said aisle, which condition rendered and allowed the floor at such place to become obstructed by said boxes, whereby and by reason whereof, a person walking at said place was likely to and would be caused to fall over said boxes and be injured . . . whereby said floor at said place was rendered not reasonably safe for persons walking thereon, and that defendant knew, or by the exercise of ordinary care could have known of said condition, in time thereafter, by the exercise of ordinary care, to have remedied said condition . . . . but that defendant negligently failed so to do."

The answer of defendant was a general denial and a plea of contributory negligence.

Defendant contends that the trial court erred in refusing to give to the jury its requested instruction for a directed verdict in its favor at the close of the evidence. In support of its contention defendant

argues that there was no evidence to support any theory of negligence on its part, and that the court erred in giving and reading to the jury plaintiff's Instruction No. 1. These contentions make it necessary for us to review the evidence.

Plaintiff's testimony showed that defendant's store was located on the north side of Olive Street Road, east of the North and South Road in St. Louis County; that it was of the self-service style; that it had three or four aisles about six or seven feet wide running north and south divided by shelves in tiers about five feet high upon which grocery goods were displayed; that customers walked through the aisles and selected their own goods from the shelves, after which they carried the goods to the front part of the store where they were checked by one of defendant's servants and paid for by the customers. Plaintiff testified that about two or three o'clock in the afternoon of February 26, 1942, he entered defendant's store for the purpose of purchasing bread, salt and tuna fish. He selected a loaf of bread near the front entrance, walked toward the west, then north in the first aisle in the west side of the store, looking for salt and tuna fish. He then turned to his right or the east around the north end of the tier of shelves (also referred to as counters), then walked south in the second aisle toward the front of the store looking for tuna fish. As he turned into the second aisle he saw a box about twelve inches square and twelve inches high resting on the floor in the aisle. At that time he saw only one box. He then walked south past the box about thirty or forty feet, still looking for salt and tuna fish. At this point the plaintiff testified:

"Q. You say when you finally got down near where these boxes began you might have picked up the salt? A. I am not sure; I knock first time with this leg, with this foot.

.  .  .  .  .  .

"Q. At any rate, you then stepped backwards, didn't you, and struck this box? A. I told you when I was like this, and I saw they have no tuna fish any more I go away. Well, I keep going like that, just straight up, my plans to go away. When I find first box, well, I have another step, nothing there, you lose your balance, don't you?

.  .  .  .  .  .

"A.  .  .  . When I see they never have any more I try to go this way. When I find box here I know I fall because I lose my balance, and keep going like this, back, just over, my foot over, so I find the other box.

"Q. Your other foot hit the other box? A. Hit the other box, and I lose balance and I fall, . . ."

Plaintiff's further testimony in this connection was to the effect that the box which first caused him to stumble was about three inches from his foot before he moved; that this box was not far from another box and when his foot struck the first box he stumbled, twisted and

swung around so that his left foot hit the second box which caused him to lose his balance and fall backwards to the floor. Plaintiff stated that he did not know what was inside the boxes, but said "the boxes was good weight, pretty heavy," and further "because when I touch with the foot it was not moved, it was heavy."

From the foregoing excerpts of plaintiff's testimony the difficulties under which he labored in trying to make clear what actually occurred are obvious. A careful reading of all of plaintiff's testimony, however, shows that it was to the effect that there were two boxes on the floor in the aisle, one larger than the other; that he did not see the smaller box at any time before he fell because it was obscured from his view by the larger box; that the smaller box was behind the larger box and closer to the counter or tier of shelves. With reference to the second or smaller box plaintiff testified:

"Q. Had you seen that second box before? A. No, I see one box when I get into the aisles, like that. When I knock my foot to the box I see it is a box. I try to be on my balance, to don't fall, but I find another box and I fall right to the concrete."

Further testifying with respect to the manner in which he fell, plaintiff said: "I don't see tuna fish any further. I just draw back to go home. . . . Now, when I knock I remember a box I saw, I believe it was the biggest box I saw before. I try holding my balance, maybe I came a step with the other foot. I don't fall. I knock the other box, then I fall, but I can't help any more. I lose my balance. I can't stand on my feet. I fall. If it was not for the other box I never fall."

Throughout his testimony plaintiff used the word "knock" to express the idea of his coming in contact with the boxes.

Plaintiff, as respondent, has filed in this court "Respondent's Additional Abstract of the Record." It contains the deposition of George Cox which was offered during the trial by counsel for plaintiff but was objected to by counsel for defendant on the ground that no foundation had been laid to make the deposition admissible. Plaintiff's counsel admitted that no subpoena had been issued for Cox. Moreover, there was no showing of compliance with any of the provisions of Section 1944, Revised Statutes Missouri, 1939, Missouri Revised Statutes Annotated, section 1944, that would authorize the deposition to be read. The court sustained the objection and the deposition was not admitted in evidence and was not read to the jury. However, said additional abstract of the record contains the statement that the deposition was, by agreement of counsel for plaintiff and counsel for defendant, made a part of the bill of exceptions herein at the request of counsel for plaintiff. Plaintiff, against whom the ruling excluding the deposition was made, saved no exception, and, of course, took no appeal since the jury returned a verdict in his favor. We have, however, read the deposition and it shows that George Cox,

the witness who testified therein, was the assistant manager of defendant's store at the time plaintiff sustained his injuries. Without going into detail, we may properly say that the deposition contains testimony showing the condition of the aisles and of the tiers of shelves or counters in the store at the time plaintiff was injured, as well as testimony concerning the boxes in question, their position on the floor, what they contained, and how they came to be placed there.

The agreement of counsel permitting the deposition to be attached to the bill of exceptions cannot be given the effect of setting aside the ruling of the court at the trial excluding it from evidence. That ruling still stands and has not been questioned in this court. The bill of exceptions approved by the trial court, as it appears in the regular abstract of the record filed herein by defendant-appellant, does not contain said deposition, but on the contrary shows that it was excluded by the court. It further shows that plaintiff then rested his case; that defendant thereupon offered its instruction directing a verdict in its favor, which was refused; and that the cause was then submitted to the jury on instructions requested by both parties. In Bakersfield News v. Ozark County, 338 Mo. 519, 92 S. W. (2d) 603, our Supreme Court held that where parties try a case on evidence they cannot without the allowance of a bill of exceptions agree on facts to be submitted for appellate review. It is true that in the Bakersfield News case, *supra,* no bill of exceptions was filed, whereas in this case one was filed; nevertheless, we think that the principle on which the ruling in said case was based applies to the case at bar. The Supreme Court stated the reasons for such a rule in the following unequivocal language:

"If counsel were permitted to agree to facts for this court to consider in cases on appeal, it would be possible to frame most questions that the trial court never determined. The integrity of all matters, not a part of the record proper, must depend upon coming into the record through a duly allowed bill of exceptions, because this court cannot know whether it is passing upon the same case that the trial court decided, unless it considers the case only upon the record made in the trial court." [Bakersfield News v. Ozark County, 338 Mo. 519, 521, 92 S. W. (2d) 603, 604.]

Under the rule announced in the above case, we hold that the testimony in the deposition mentioned cannot be considered in determining this case on this appeal.

The exclusion of the deposition of George Cox, defendant's assistant manager, leaves plaintiff's case dependent solely upon his own testimony. No other witness testified in the case—defendant having called no witnesses. We believe that plaintiff's testimony, standing alone, is not sufficient to show that any of defendant's servants or agents placed the boxes in the aisle, or that after they were placed there defendant knew they were there for a sufficient length of time

wherein, by the exercise of ordinary care, it could have removed them and thus have rendered the aisle reasonably safe and avoided plaintiff's injuries. Plaintiff gave no testimony whatsoever to show who placed the boxes in the aisle, nor did he state what the boxes contained. If plaintiff had given a more definite description of the boxes and had shown that they contained groceries, or had shown that they were made of wood, pasteboard or other material commonly used by grocers to hold grocery goods, the jury might properly have inferred that the boxes were placed on the floor by defendant's servants in the course of its business, for that would be a reasonable inference from such facts. However, plaintiff gave no such testimony. The nearest he came to a description of the boxes was that they were about twelve inches square and twelve inches high and were "good weight, pretty heavy." There was nothing in plaintiff's testimony to show how long the boxes had been in the aisle before he stumbled over them except the period of time after he saw the first box and before he stumbled over it. We think that the very brief period of time shown by such testimony was entirely too speculative as a basis upon which to hold that defendant was negligent, and could not reasonably be said to be of sufficient length to charge defendant with constructive notice of the presence of the boxes and to enable it, by exercising ordinary care, to remove them and make the aisle reasonably safe.

Although defendant owed to plaintiff the duty to exercise ordinary care to keep and maintain the aisles of its store in a reasonably safe condition for his use as its invitee, it was not an insurer of plaintiff's safety while he was in the store. Defendant could be held to be liable only if, by failure to exercise ordinary care, it placed the boxes in the aisle in such a position as to render the aisle not reasonably safe for the use of its customers, or if it permitted the boxes to remain there after it knew, or by the exercise of ordinary care could have known, of their presence for a sufficient length of time wherein by the exercise of ordinary care it could have removed them and thus have rendered the aisle reasonably safe. [Robinson v. The Great Atlantic & Pacific Tea Co., 347 Mo. 421, 423, 147 S. W. (2d) 648, 649, 650.]

In the Robinson case, *supra*, a judgment for $10,000 was rendered in the trial court in favor of plaintiff who had sustained injuries by falling over a box of sweet potatoes in the vestibule of defendant's store. The petition of plaintiff in said case alleged that defendant negligently "caused, suffered and permitted" the box of sweet potatoes to be and remain in the vestibule exit of the store. In reversing the judgment outright the Supreme Court held that storekeeper was not liable to its invitee for injury resulting from the alleged dangerous and unsafe condition of the store because it was not shown that the storekeeper had knowledge, actual or constructive, of such condition in time, by the exercise of ordinary care, to have remedied the condition before the occurrence of the injury.

The doctrine applied in the Robinson case, *supra,* has been applied in numerous cases involving various states of fact. A number of such cases were cited by the Supreme Court in the Robinson case, *supra.* In the case at bar defendant also has cited numerous cases applying the same doctrine. The list of such cases grows year by year. No useful purpose would be served if we were to discuss and analyze them here. For those interested, we cite the following: State ex rel. Trading Post Co. v. Shain, 342 Mo. 588, 593, 594, 116 S. W. (2d) 99, 102; McKeighan v. Kline's, Inc., 339 Mo. 523, 528, 98 S. W. (2d) 555, 558, 560; Berberet v. Electric Park Amusement Co., 319 Mo. 275, 283, 284, 3 S. W. (2d) 1025, 1029, 1030; Uelentrup v. Switzerland Stores, Inc. (Mo. App.), 164 S. W. (2d) 650, 651; Smith v. Sears, Roebuck & Co. (Mo. App.), 117 S. W. (2d) 658, 661; Varner v. Kroger Grocery & Baking Co. (Mo. App.), 75 S. W. (2d) 585, 587; Achter v. Sears, Roebuck & Co., 232 Mo. App. 915, 921, 105 S. W. (2d) 959, 962.

Under the doctrine applied in the foregoing cases, we hold that plaintiff's testimony was not sufficient to warrant the court in submitting the case to the jury and the court erred in refusing defendant's request for a directed verdict in its favor.

Defendant contends that plaintiff was guilty of contributory negligence in failing to avoid a condition which he had seen and which was open, obvious and apparent to him; and that he was also negligent in stepping backwards without looking or paying attention to what he was doing. We refer to this contention of defendant because a consideration thereof will aid us in determining whether the judgment herein should be reversed outright or reversed and the cause remanded. If plaintiff was guilty of contributory negligence as a matter of law, it will be our duty to reverse the judgment outright because he testified fully concerning his own conduct and actions while in the store, and the judgment as to that issue must stand or fall on said testimony. A remand of the cause could not properly change that phase of the case for we must assume that, having testified fully concerning his own actions and conduct, plaintiff's testimony would be the same on another trial.

We are of the opinion that plaintiff's testimony was not such as to warrant the court in taking the case away from the jury on the ground of his alleged contributory negligence. Plaintiff did not actually see the second box until after he had stumbled over the first box, and it was the second box that caused him to fall.

It must be remembered that defendant's store was a self-service store into which defendant invited customers to come and select for themselves from its shelves the merchandise desired. Therefore, customers in searching for merchandise would necessarily be required to pay close attention to the shelves where the merchandise was displayed, and would not ordinarily be expected to watch the floor and each

step taken in the aisles furnished by the defendant for the use of its customers.

Taking plaintiff's evidence as true and allowing him all reasonable inferences arising therefrom, as we are required to do under the long-established rule, we cannot say that plaintiff was guilty of contributory negligence as a matter of law. A demurrer to plaintiff's evidence on that ground could have been properly sustained only if the facts in evidence and all reasonable inferences arising therefrom were so strongly against plaintiff as to leave no room for reasonable minds to differ. [Young v. Wheelock, 333 Mo. 992, 1001, 64 S. W. (2d) 950, 954.] We hold that on the record now before us the court would not have been justified in directing a verdict for defendant on the ground of plaintiff's contributory negligence.

Having found on the record before us that plaintiff's evidence was insufficient to submit the case to the jury and that plaintiff was not guilty of contributory negligence as a matter of law, we believe that inasmuch as plaintiff misconceived the legal value of the meager evidence on which he submitted his case to the jury, we should remand the cause for another trial instead of reversing the judgment outright. It is obvious that another trial will enable him to develop the facts more fully. It has been the invariable practice of our Supreme Court and courts of appeals to remand a cause for another trial where, as here, the appellate court is convinced that there is a hiatus in the evidence which can be supplied if a new trial be granted. [Finnegan v. Missouri Pac. R. Co., 244 Mo. 608, 662, 663; 149 S. W. 612.]

In Byrne v. Prudential Ins. Co. of America (Mo.), 88 S. W. (2d) 344, 347, our Supreme Court said:

"However, because plaintiff failed to make a case, an outright reversal does not necessarily result. It is the settled practice of appellate procedure that a case should not be reversed, for failure of proof, without remanding unless the appellate court is convinced that the available essential evidence has been fully presented and that no recovery can be had in any event."

In State ex rel. Scullin et al. v. Robertson et al. (Mo.), 187 S. W. 34, our Supreme Court held that the action of the Springfield Court of Appeals in remanding a cause after reversal would not be disturbed on *certiorari* even though the evidence was insufficient to support a recovery for the plaintiff therein; and that the Court of Appeals had authority under the statute (now Section 1229, R. S. Mo. 1939, Mo. R. S. A., section 1229) to remand, because there was a possibility that sufficient evidence to make a case might be adduced by plaintiff on another trial. The statute, section 1229, *supra,* provides that the Supreme Court and Courts of Appeals in appeals or writs error, "shall examine the record and *award a new trial,* reverse or affirm the judgment . . ., or give such judgment as such circuit

court ought to have given, *as to them shall seem agreeable to law."* (Emphasis ours.)

In the above Scullin case the Supreme Court said:

"In such circumstances it is the settled practice of this court to remand causes for retrial even when we hold the evidence in the record insufficient to make a case. This is true even in criminal cases. No case holding the contrary is cited. We cannot hold our brethren of the Court of Appeals in error for ruling as we ourselves habitually rule." [State ex rel. Scullin et al. v. Robertson et al. (Mo.), 187 S. W. 34, loc. cit. 36.]

In Heard v. St. Louis-San Francisco Ry. Co. (Mo. App.), 16 S. W. (2d) 719, the same doctrine was applied—the court holding that an appellate court will not reverse a judgment without remanding the cause unless it is apparent that the facts have been fully developed and that no recovery can be had in any event.

See also, to the same effect, R. D. Kurtz, Inc., v. Field, 223 Mo. App. 270, 14 S. W. (2d) 9; Jones v. Norman (Mo. App.), 24 S. W. (2d) 191; Collins v. Leahy, 344 Mo. 250, 125 S. W. (2d) 874.

In Johnson v. Kruckemeyer, 224 Mo. App. 351, 364, 29 S. W. (2d) 730, 735, although it was a proceeding originating before the Workmen's Compensation Commission, this court said:

"It is axiomatic in appellate procedure that a case should not be reversed without remanding, unless the evidence has been fully presented, and the appellate court is convinced that the facts are such that a recovery cannot be had."

It being manifest that there is additional evidence available which plaintiff may adduce on a new trial, the judgment is reversed and the cause remanded for a new trial. *Hughes, P. J.,* and *Anderson, J.,* concur.