Doris WARD, Appellant,

v.

TEMPLE STEPHENS COMPANY, a corporation, Respondent.

No. 52362.

Supreme Court of Missouri,
Division No. 2.

Sept. 11, 1967.

Motion for Rehearing or to Transfer to Court
En Banc Denied Oct. 9, 1967.

Scott O. Wright, Brown, Wright & Willbrand, Columbia, for appellant.

J. Turner Jones, Columbia, for respondent, Welliver, Porter & Cleaveland, Columbia, of counsel.

EAGER, Judge.

This is a suit for personal injuries arising from a fall in defendant's store in Columbia, Missouri. Plaintiff alleged that defendant had negligently "caused, allowed and permitted" a rural mailbox to extend out into the aisle, causing her to fall. There was evidence of substantial injuries; but since the verdict was for defendant, no further reference thereto will be necessary. We have jurisdiction, since the prayer was for $30,000. The defendant denied all substantive allegations, and alleged that plaintiff's own negligence caused or contributed to her injury. Plaintiff has briefed three specific points of alleged error; defendant's first point is that no submissible case of negligence was made by plaintiff, and we shall therefore need to state the evidence in some detail.

The store was located at Business Route 70 and Garth Avenue; it faced east. It was 70 feet east and west and 180 feet north and south. The main display shelves or counters ran east and west through the store with aisles between. Some of those shelves were shorter than the others and at the ends of these defendant had set up three "display islands" or counters running north and south with ample room (approximately six feet) to pass between these and the ends of east-west shelves. These north and south counters were approximately five feet high, about three feet wide at the bottom, and tapered to about two feet at the top. Much effort was made and much space in the transcript is consumed by both parties in attempting to develop further the exact layout of the store, but some of this evidence has been more confusing than enlightening. It will suffice for our purposes to say that the events involved here happened at the side of and perhaps extended just north of one of the north-south display counters or islands, probably the south one; and also that there was an open space south of that counter. Plaintiff, a married woman then 46 years old, entered the store at about 4:00 p. m. on December 3, 1964, picked up two small cartons of cream at the rear, and walked east down an aisle to a card display where she stopped and selected one or more cards; from that point she saw farther east the island counter in question with a display of clocks on the top shelf. She then proceeded down the aisle to the clocks, put down her cream, and proceeded to try out three of the clocks by winding the alarms (and perhaps the time mechanism) and listening to them; she estimated that she consumed ten minutes in this endeavor. As she was about ready to select one of the three, she saw a clock on the other side of the top shelf which she wanted to look at, but could not reach. In this situation, she (then facing east toward the counter) turned her body to the left and, still glancing back at the clocks and never looking down, took three or four steps along the counter at a "normal" distance from it, hit something with her right foot or ankle and then with her left, "started flippin' around" and fell; she landed facing in the direction from which she had come and leaning against a counter, apparently having struck the floor largely on her buttocks. She testified that she first looked down, and first saw the mailbox after her second (left) leg had struck it. All this occurred near the north end of the counter; she suffered a severe cut on her left leg, and claimed other and permanent injuries. The mailbox was in the aisle somewhere near the end of the counter after plaintiff's fall. It was two feet or more in length and perhaps 15–18 inches high. At least one piece of crockery had been knocked from the counter and was broken in the aisle. Plaintiff was given prompt assistance and taken to a hospital. She testified that while she was looking at the clocks she did not notice anyone else

around but that she "wasn't paying any attention to anything else." She gave no testimony whatever as to the position of the mailbox at any time before she struck it with her left foot or leg.

Another customer, Mrs. Stuart Spradling, was produced on behalf of plaintiff. Considerable confusion developed over the partial use and attempted further use of a statement previously taken from her by counsel for plaintiff, but her testimony in substance was: that she had passed up that aisle pushing a cart, but had not noticed the plaintiff; she thought that she had seen the mailbox as she passed and that it had seemed to her to be a little unusual in a display on a Christmas counter; she had not seen it in the aisle, but did not know its precise position or location at the time; after she proceeded on to the next counter she looked back (past plaintiff) for her little boy, and then saw plaintiff, about ready to fall, put up her hand, twirl, and fall, with a smashing of crockery; after the fall the mailbox was within two feet of the end of the counter. At one point (and during considerable controversy over her statement) she said that she could not remember whether the mailbox was on the floor or on the counter when she first saw it, but that she pushed her cart along the aisle about one foot from the counter and had no difficulty.

A cigarette salesman, Don Cardwell, was in the store at the time, arranging a display in the open space just south of the island counter in question; he heard the fall, walked around the corner and saw plaintiff on the floor. He had been talking to the manager, Kenneth Morrow, at that location for about five minutes; he testified that there was a clear view up the aisle from that general location if one had looked, depending somewhat on the exact position, but that he had not looked up the aisle. He saw the mailbox on the floor after the fall, and not "too far out" from the counter. Cardwell assisted in giving first aid to the plaintiff.

Kenneth Morrow, the manager, and Fred Holmes, assistant manager, testified for the defendant. Mr. Morrow's testimony was in substance as follows: that he had passed along that aisle about ten or fifteen minutes before plaintiff's fall, but he did not "observe" the mailbox at that time; that it was kept on the bottom shelf; that he had talked to the cigarette salesman for a few minutes shortly prior to the accident about the display he was putting in south of the counter, but that he was back in the storeroom when he learned of it; the counter was three to four feet wide at the bottom and approximately two feet wide at the top; that after the accident the mailbox was lying on the floor beside the counter; that they (in the store) were careful to keep the aisles clear, realizing that customers frequently were looking at the merchandise and not at the floor. Mr. Holmes testifed: that he had swept the aisles of the whole store with a wide push broom on that afternoon beginning at about 3:00 o'clock; that he saw the mailbox on the bottom shelf of the counter at around 3:30; that it was near the north end of the counter; that there was no mailbox in the aisle. Mr. Holmes was of the opinion that the counter holding the mailbox was the middle one of the three island counters rather than the south one, as the other evidence indicated.

There was no testimony concerning the actual location of the mailbox immediately prior to plaintiff's fall except that, at about 3:30, it was on the bottom shelf of an island counter. It was not shown, by either plaintiff's or defendant's evidence, whether it protruded into the aisle, how it was first moved, or how it got into a position on the floor in front of plaintiff.

■ We first consider defendant's contention that plaintiff did not make out a submissible case of negligence. In so doing we naturally give her the benefit of all favorable inferences from the testimony of her witnesses and the benefit of any favorable testimony from defendant's wit-

nesses which is not inconsistent with her evidence and theory.

■ The liability of a defendant store-owner in such cases is based upon his superior knowledge of a defective condition on his premises which results in injury. Brophy v. Clisaris, Mo.App., 368 S.W.2d 553, 557; Gruetzemacher v. Billings, Mo., 348 S.W.2d 952; Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226; Wilkins v. Allied Stores of Missouri, Mo., 308 S.W.2d 623; McElroy v. S. S. Kresge Co., Mo.App., 244 S.W.2d 425. The opinions in such cases frequently cite 2 Restatement, Law of Torts, § 343, in support of the rule. Liability under this doctrine requires notice to the defendant, actual or constructive, of the defective condition. Robinson v. Great Atlantic & Pacific Tea Co., 347 Mo. 421, 147 S.W.2d 648, and numerous cases there cited. Generally, defendant is deemed to have had actual notice if it is affirmatively shown that an agent of the defendant has placed an obstruction in the aisle of a store, for that act supplies the requirement of notice. Seigel v. Kroger Grocery & Baking Co., Mo.App., 164 S.W.2d 645; Richardson v. Safeway Stores, Inc., Mo.App., 379 S.W. 2d 827. In the absence of such a showing, there must be evidence that the defect has existed for a sufficient length of time to constitute constructive notice, or, in other words, to show that defendant *should* reasonably have known of it. Robinson, supra; Lance v. Van Winkle, 358 Mo. 143, 213 S.W.2d 401; McElroy v. S. S. Kresge Co., Mo.App., 244 S.W.2d 425; Poe v. Safeway Stores, Inc., Mo.App., 409 S.W. 2d 746; Brophy v. Clisaris, Mo.App., 368 S.W.2d 553; Richardson, supra; Hopkins v. Sefton Fibre Can Co., Mo.App., 390 S.W.2d 907.

■ In the present case there is no evidence to show that defendant or its employees placed the mailbox in the aisle, nor is there any evidence that it was kept by defendant in such manner that it protruded into the aisle. Insofar as the time element is concerned, as affecting constructive notice, there is no evidence that the mailbox was in the aisle until the moment plaintiff struck it. We have not been cited to any case fairly identical on its facts, nor have we found any. Plaintiff's counsel argue that a customer may reasonably presume that the aisles of a store are clear and free of obstructions, citing Blackwell v. J. J. Newberry Co., Mo. App., 156 S.W.2d 14; Seigel v. Kroger Grocery & Baking Co., Mo.App., 164 S.W. 2d 645; and Casciaro v. Great Atlantic & Pacific Tea Co., 238 Mo.App. 361, 183 S.W.2d 833. That is true, but the statement does not answer our essential question, i. e.—whether *defendant was negligent* in placing or leaving an obstruction there. The asserted proposition goes mainly to the question of a plaintiff's contributory negligence. In the first two of the cited cases there was substantial evidence to indicate that the defendants had placed obstructions in the aisles, and in the last case the judgment was reversed and the cause remanded because there was no such evidence and further, because there was no evidence of the length of time the obstruction had remained in the aisle.

Cases which, by analogy, are worthy of mention are: Brophy v. Clisaris, Mo.App., 368 S.W.2d 553; Poe v. Safeway Stores, Inc., Mo.App., 409 S.W.2d 746; Robinson v. Great Atlantic & Pacific Tea Co., 347 Mo. 421, 147 S.W.2d 648; Richardson v. Safeway Stores, Inc., Mo.App., 379 S.W. 2d 827, and Lance v. Van Winkle, 358 Mo. 143, 213 S.W.2d 401. In all those cases the plaintiffs were allegedly caused to fall because of the presence of foreign objects in the aisles, walkways or traveled portions of the defendants' places of business. In Brophy and Robinson it was held in substance that the presence of a box of potatoes in a vestibule or of food or grease on a ballroom floor for 10 or 15 minutes was not sufficient to create constructive notice. In Poe, where plaintiff slipped on a piece of lettuce near the check-out counters of a supermarket, with no showing as

to how it got there or how long it had been there, no recovery was permitted, although a check-out clerk and a "sacker" could apparently have seen the lettuce, had they looked, from their respective positions. In Richardson, plaintiff had supposedly slipped on a round bone on the floor near the meat counter; there was no evidence to show how or when it got there and the floor had been checked about half an hour previously. No recovery was permitted. In Lance, there was a similar lack of evidence concerning the presence of part of an ice cream cone on a step and no recovery was permitted. Two other cases should probably be mentioned by way of distinction. In Alvey v. Sears, Roebuck & Co., Mo., 360 S.W.2d 231, the court held that there was sufficient evidence to show that plaintiff had slipped on a small, round plastic object on the floor of an aisle, and that the assistant manager had walked along that aisle 15 feet ahead of the plaintiff. Recovery was permitted (although the court stated that the question was "close") upon the theory that the assistant manager's failure to see and remove the object constituted submissible evidence of negligence. There, the object was presumably in the same spot when he passed along the aisle. Here, there is no showing as to where the mailbox was until plaintiff struck it, except that it was on the shelf. In Harbourn v. Katz Drug Co., Mo., 318 S.W.2d 226, plaintiff fell over the base of a platform scales located between two sets of swinging entrance doors; when she approached one door to go out, she found it locked; turning to go out the other door, she fell over the scales. Most of the discussion concerning defendant's negligence involved the doctrine that one may not recover where risk of injury is open and obvious; recovery was nevertheless permitted upon the theory that defendant had, by locking one door and leaving the scales platform directly in the pathway of those who acted as plaintiff did (and more or less out of his or her line of vision) created a sort of trap. No question arose there as to the responsibility for placing the scales, or as to how long they had been there. The facts are therefore entirely different from ours.

It is hardly necessary to consider what various acts might conceivably have been responsible for placing the mailbox in plaintiff's path. She may have bumped against it and knocked it down herself, or some other customer or intermeddler may have pulled it out and left it on the floor within the preceding few minutes. It is true that plaintiff testified that she had noticed no one else around the counter as she looked at the clocks, but in the same breath she testified that: "I wasn't paying any attention to anything else." Such negative evidence is not of sufficient force to eliminate the possibility of interference by someone else. See 32A C.J.S. Evidence § 1037, p. 720; Borrson v. Missouri-Kansas-Texas R. Co., Mo., 161 S.W.2d 227. Plaintiff had not even seen Mrs. Spradling who pushed her cart through that spot probably a minute or two before the fall. Under all the circumstances we find no evidence sufficient to raise a fair inference that: (1) defendant negligently placed the mailbox in the aisle or caused it to protrude into the aisle; or (2) that it had permitted the mailbox to remain in either of such positions for such a length of time as to reasonably give it constructive notice. An inference here based upon either of such theories would rest upon pure conjecture. On these facts, plaintiff did not make a submissible case, and defendant's motion for a directed verdict at the close of all the evidence should have been sustained.

It will thus be unnecessary to consider plaintiff's specific points of error concerning an instruction, the argument of defendant's counsel, and the refusal of certain evidence. On this record the judgment was for the right party and it will be, and is, affirmed.

All of the Judges concur.