Harold L. **SHEIL,**
Appellant–Respondent,

v.

**T.G. & Y. STORES COMPANY,**
Respondent–Appellant.

No. 71547.

Supreme Court of Missouri,
En Banc.

Dec. 12, 1989.

Rehearing Denied Jan. 10, 1990.

Glenn E. Bradford, Kansas City, for respondent-appellant.

J. Michael Cronan, Kansas City, for appellant-respondent.

BLACKMAR, Chief Justice.

This case and *Moss v. National Super Markets, Inc.*, 781 S.W.2d 784 (Mo. banc 1989) (No. 71612, decided concurrently) are "slip and fall cases." In each the plaintiff had a verdict with recovery reduced because of a jury finding of comparative fault. In each the court of appeals reversed outright, finding that the element of notice to the defendant storeowner had not been established by substantial evidence. We granted transfer to consider the cases in the light of our recent decisions in *Cox v. J.C. Penney Co.*, 741 S.W.2d 28 (Mo. banc 1987), and *Patton v. May Department Stores*, 762 S.W.2d 38 (Mo. banc 1988). The importance of the cases is demonstrated by the large volume of slip and fall cases, in this jurisdiction and others, over the years.

We summarize the evidence from the plaintiff's standpoint. On March 19, 1980, he went to the T.G. & Y. store in the Gladstone Plaza Shopping Center to buy a gasoline additive for his truck and headed to the automotive section. He did not recall having seen any store clerks or anybody else in the aisle. He observed the shelves at about eye-level. He noticed out of the corner of his eye that he was nearing the end of the aisle. As he turned to walk down the aisle, he tripped over a box that he had not seen before and fell to the floor. He saw the box during his fall and described it as a small box, abnormally heavy for its size. The box was not in the middle of the aisle, but rather closer to a floor display at the end of the aisle. While falling he stuck out his hand to catch himself, knocking over a display of "cans or something." The next thing he knew, he was lying on the floor.

After he fell a woman approached him, asking if he was all right. He thought she identified herself as the assistant manager, but specifically stated that he did not remember. She said "something to the effect of 'I don't know why—I don't know why they leave these boxes laying around' or 'I don't know why the thing was there'

or something similar to that." He also talked with a man he later learned was the store manager,[1] who said basically the same thing as the woman, "like 'you know, that shouldn't have been there,' or 'We have a place for those things,' or something like that." No objection was made to the plaintiff's characterization of these individuals as manager and assistant manager.

The defendant offered the videotaped deposition of a former assistant manager of the store who was on duty the day the plaintiff fell. She went to him after he fell and asked what had happened. This testimony corroborates the plaintiff's identification of the assistant manager. She described the area where he fell as containing a floor stack of four or five boxes stacked on top of each other with a sign at the top stating a price. The floor stack contained cans of motor oil and was five or six feet tall. In the aisle where the floor stack was located there was enough room for a person with a shopping cart to walk beside the floor stack. She was not aware of an odd isolated box in the area where the plaintiff fell. She inspected the area to see what might have caused the problem and found only cans of oil, apparently from the floor stack. She did not recall seeing anything else that could have accounted for the plaintiff's fall.

■ The defendant contends that the plaintiff did not make a submissible case, citing *Ward v. Temple Stephens Co.*, 418 S.W.2d 935 (Mo.1967). It argues that the evidence did not support an inference that an employee of the defendant, as opposed to a customer, had placed the heavy box in the aisle. It submits that there was no evidentiary basis for a reasonable inference that the box had been in the aisle for a sufficient length of time so that the storeowner should have known about the dangerous condition. The court of appeals ac-

cepted this argument. Its holding is in line with numerous cases in which the storeowner is charged with responsibility for known danger but has only minimal duty to anticipate dangers.

We conclude, however, that the plaintiff should be held to have made a submissible case under the evidence shown by this record, and that some of the earlier cases are too restrictive of the jury's authority, at least in cases involving the "self service" type store which is usual in modern retail merchandising. The customers are invited to traverse the aisles and to handle the merchandise. The storeowner necessarily knows that customers may take merchandise into their hands and may then lay articles that no longer interest them down in the aisle. If the item is heavy, it is particularly likely that the customer may not put it back from where it came, possibly because of fear of disarranging other merchandise. The storeowner, therefore, must anticipate and must exercise due care to guard against dangers from articles left in the aisle.

Past cases have placed great emphasis on the length of time the dangerous item has been in the area in which the injury occurs. These cases culminate in holdings that a showing that the item was on the floor for as much as 20 minutes is insufficient to charge the storekeeper with constructive notice. *Carraway v. National Supermarket*, 741 S.W.2d 895 (Mo.App. 1987); *Grant v. National Supermarket*, 611 S.W.2d 357 (Mo.App.1980).[2] By our holding, the precise time will not be so important a factor. More important will be the method of merchandising and the nature of the article causing the injury.

■ Here it is reasonable to infer that the box contained merchandise that the store held for sale in the area in which the plaintiff fell. The testimony of the manag-

---

1. The plaintiff's pretrial statements, in which he said that only a woman talked to him after he fell, were of course for the jury to weigh.

2. *But cf. McGrury v. Kansas City*, 397 S.W.2d 688 (Mo.1965); *Stocker v. J.C. Penney Co.*, 338 S.W.2d 339 (Mo.App.1960); *Hogan v. S.S. Kresge Co.*, 93 S.W.2d 118 (Mo.App.1936).

er and the assistant manager arguably indicates some recognition that an employee of the store may have placed the box in a place where it should not have been, but our conclusion does not depend on this precise finding. The jury might just as well infer that a customer picked up the box and then, having lost interest in making a purchase, set it on the floor. Customers who are invited to handle merchandise assume part of the work previously performed by store employees and present an additional danger. The box in the aisle was a dangerous, foreseeable condition, and the store had the duty to use due care to protect customers against dangers of this kind. The jury could find from the evidence that the defendant had breached this duty.

Our conclusion finds support in the case law from other jurisdictions, which take note of modern methods of merchandising. We agree with the language of the court of appeals of Washington in *Ciminski v. Finn Corp.*, 13 Wash.App. 815, 537 P.2d 850 (1975), as follows:

> It is common knowledge that the modern merchandising method of self-service poses a considerably different situation than the older method of individual clerk assistance. It is much more likely that items for sale and other foreign substances will fall to the floor. Clerks replenish supplies by carrying them through the area the customer is required to traverse when selecting items. Customers are naturally not as careful in handling the merchandise as clerks would be. They may pick up and put back several items before ultimately selecting one. Not unreasonably they are concentrating on the items displayed, which are usually arranged specifically to attract their attention. Such conditions are equally typical of self-service restaurants and the most common self-service operation, the modern supermarket.

> An owner of a self-service operation has actual notice of these problems. In choosing a self-service method of providing items, he is charged with the knowledge of the foreseeable risks inherent in such a mode of operation. The logic of this rule is obvious if it is remembered that if a clerk or other employee has been negligent, the employer is charged with the responsibility of creating a dangerous condition. In a self-service operation, an owner has for his pecuniary benefit required customers to perform the tasks previously carried out by employees. Thus, the risk of items being dangerously located on the floor, which previously was created by the employees, is now created by other customers. But it is the very same risk and the risk has been created by the owner by his choice of mode of operation. He is charged with the creation of this condition just as he would be charged with the responsibility for negligent acts of his employees. A pattern of conduct, such as self-service, is as permanent and the risks from such pattern as foreseeable, as a deceptive condition. An owner is required to take reasonable precautions against such deceptive conditions on his premises to prevent injury to patrons.

> This rule does not create a higher standard of care for self-service operations. It is axiomatic that a property owner or occupier is required to use reasonable care toward his business invitees. What is reasonable depends upon the nature and the circumstances surrounding the business conducted. One of the circumstances to be considered is the method of operation. The realities of a self-service operation cannot be ignored, and what is reasonable for the Ma and Pa grocery store where Pa retrieves each item from behind the counter for the customer may not be reasonable where the customers have access to every item for sale and are subject to the whims of all other customers in handing that merchandise.

*Id.* 13 Wash.App. at 818–19, 537 P.2d at 853 (citations omitted).

Also supportive are *Lingerfelt v. Winn–Dixie Texas, Inc.*, 645 P.2d 485 (Okla.1982);

*Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292 (Tex.1983); Annotation, *Store or Business Premises Slip–And–Fall: Modern Status of Rules Requiring Showing of Notice of Proprietor of Transitory Interior Condition Allegedly Causing Plaintiff's Fall,* 85 A.L.R.3d 1000 (1978). Restatement (Second) Torts § 343 comment b reads as follows:

> To the invitee the possessor owes ... the additional duty to exercise reasonable affirmative care to see that the premises are safe for the reception of the visitor, or at least to ascertain the condition of the land, and to give such warning that the visitor may decide intelligently whether or not to accept the invitation, or may protect himself against the danger if he does accept it.

Comment e continues:

> On the other hand, one entering a store, theatre, office building, or hotel, is entitled to expect that his host will make far greater preparations to secure the safety of his patrons than a householder will make for his social or even his business visitors.

Some of our own cases, indeed, recognize the difference in methods of merchandising, in discussing the degree of care the customer must exercise. In *Casciaro v. Great Atl. & Pac. Tea Co.,* 238 Mo.App. 361, 183 S.W.2d 833, 838 (1944), the court observed that customers cannot be expected to observe the shelves and the floor at the same time. The cases from other states cited above take the additional step of observing that the proprietor, by inviting the customers to relax their vigilance, is necessarily obliged to increase its own vigilance.

An injured customer is often at a decided disadvantage in determining what has happened. The fall victim may be dazed, helpless and friendless, unable to interview bystanders or to observe the scene carefully. The store is able to make an immediate investigation, interviewing witnesses and diagramming the scene. Relative availability of evidence to the parties is a circumstance to be considered in determining what should be required for making a submissible case.

We conclude that the jury could have found that the plaintiff was injured by a hazard that could have been expected in the store by reason of its method of merchandising and that the defendant was derelict in its duty to take reasonable steps to protect customers against the dangers presented by merchandise in the aisle. It follows that the trial court correctly overruled the motion for judgment n.o.v.

We do not agree with the suggestion in the dissent that this opinion effectively makes the store an insurer. The plaintiff's right of recovery is dependent on the jury's finding that the defendant "failed to use ordinary care...."

■ The defendant also argues that the trial court committed reversible error in admitting photographs of the aisles in the store taken on a later occasion, showing objects in the aisles. We conclude that the trial court had the discretion to admit the photographs. It was clear that they were not contemporaneous photographs, and the jury was not misled on this. There might be merit in the defendant's contention that the plaintiff could not properly argue that the photographs showed habitual negligence on the defendant's part in allowing matter to accumulate in the aisles, but no objection was taken during closing argument. We do not believe that the admission of the photographs mandates reversal.

■ The plaintiff has filed a cross appeal, arguing that the verdict should not be reduced on account of comparative fault as found by the jury because the defendant did not request a comparative fault submission and did not instruct the jury on any particulars of the plaintiff's negligence. The problem with this contention is that the plaintiff's verdict director invited the jury to assess a percentage of fault against the defendant. The plaintiff also submitted a verdict form calling for a determination of the comparative fault of both

parties. If there is error the plaintiff clearly invited it and cannot now complain. *State ex rel. State Highway Comm'n v. Nickerson & Nickerson, Inc.,* 494 S.W.2d 344 (Mo.1973); *Stevenson v. First Nat'l Bank,* 604 S.W.2d 791 (Mo.App.1980).

The judgment is affirmed.

RENDLEN, HIGGINS and BILLINGS, JJ., concur.

GEORGE M. FLANIGAN, Special Judge, dissents in separate opinion.

ROBERTSON and COVINGTON, JJ., dissent and concur in dissenting opinion of GEORGE M. FLANIGAN, Special Judge.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.

GEORGE M. FLANIGAN, Special Judge, dissenting.

I respectfully dissent.

The principal opinion points out that this case involves "the 'self service' type store which is usual in modern retail merchandising." *Supra* at 780. The opinion also states:

The storeowner, therefore, must anticipate and must exercise due care to guard against dangers from articles left in the aisle.

... [T]he precise time will not be so important a factor. More important will be the method of merchandising and the nature of the article causing the injury.

. . . .

... [T]he jury could have found that the plaintiff was injured by a hazard *which could have been expected in the store by reason of its method of merchandising* and that the defendant was derelict in its duty to take reasonable steps to protect customers against the dangers presented by merchandise in the aisle.

(Emphasis added.) *Supra* at 780–781.

The self-service store is not a recent phenomenon. Such stores have been common and popular in Missouri for at least several decades. The language quoted from the principal opinion seems to hold that this type of merchandising is inherently tortious. This is, of course, a departure from prior rulings of this Court, including *Ward v. Temple Stephens Co.,* 418 S.W.2d 935, 938[2–5] (Mo.1967).

In *Patton v. May Dept. Stores Co.,* 762 S.W.2d 38, 40, (Mo. banc 1988), this Court, in a unanimous opinion, said:

Also, in this self-service store where customers are invited to inspect, remove, and replace goods on the shelf there is an inference that another customer disarranged the goods. When the evidence only shows these two competing inferences and the probabilities are at least equal as to whether an employee or a customer caused the accidents, the courts have held the plaintiff failed to make a submissible case *Neis* [*v. National Super Markets,. Inc.,* 631 S.W.2d 690 (Mo.App.1982) ]. Under the facts of this case, however, the inference that an employee placed the box is shown superior to any inference that another customer placed it in the aisle and is sufficient to make a submissible case.

This Court promulgated, effective July 1, 1989, MAI 22.03 [1989 Revision] Verdict Directing Invitee Injured, which reads:

Your verdict must be for plaintiff if you believe: First, there was (here describe substance on floor which caused the fall) on the floor of defendant's store and as a result the floor was not reasonably safe, and

Second, defendant knew or by using ordinary care should have known of this condition, and

Third, defendant failed to use ordinary care to [remove it] [barricade it] [warn of it], and

Fourth, as a direct result of such failure, plaintiff sustained damage.

(Unless you believe plaintiff is not entitled to recover by reason of Instruction Number ___ (here insert number of affirmative defense instruction) ].

As I construe the principal opinion, evidence that the defendant is a self-service store is sufficient to support the findings required by paragraph Second and paragraph Third. This makes a self-service store an insurer with respect to injuries sustained by an invitee by reason of an unsafe object or substance on the floor without regard to why it was there or how long it had been there. This is consistent with the notion that when misfortune strikes a person there must be another person, however innocent, who must bear the financial consequences. The instant holding will increase lawsuits in a society now overly litigious.

I would reverse the judgment.