Debbie A. BRECKENRIDGE and Kirk D. Breckenridge, Appellants,

v.

MEIERHOFFER–FLEEMAN FUNERAL HOME, INC., Respondent.

No. WD 51824.

Missouri Court of Appeals, Western District.

Feb. 11, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 1997.

Application to Transfer Denied April 29, 1997.

Thomas E. Hankins, Gladstone, for appellants.

John G. Schultz, Jonathan K. McCoy, Franke & Schultz, P.C., Kansas City, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and LAURA DENVIR STITH, JJ.

ELLIS, Presiding Judge.

On Saturday, January 22, 1994, at approximately 3:00 p.m., Kirk and Debbie Breckenridge and other family members began arriving at the Meierhoffer–Fleeman Funeral Home, Inc. ("Meierhoffer") for a family viewing of a deceased relative. The temperature outside had been above freezing since 6:00 a.m. that morning, reaching a high of fifty-five degrees at 3:00 p.m. that afternoon.

When family member Phyllis Dye arrived at the funeral home, she observed a funeral home employee hosing off the walkways lead-

ing to the building. Other family members noted that the hoses were out, but did not see anyone using them.

When the family returned at 6:00 p.m. that evening to inspect the final touches on the deceased's makeup, there was no water or ice on the walkway leading to the funeral home. When they left thirty to forty-five minutes later, the temperature outside was still forty-six degrees. As they were leaving, Debbie Breckenridge slipped and fell on the walkway, which was partially covered by a six to eight inch wide, thin glaze or sheet of ice along its western edge. Although Meierhoffer had installed an electric heating system under the walkways leading to the funeral home, the system was not in use the day of the fall, because it is activated only when the temperature is forty degrees or below.

The Breckenridges brought this negligence action against Meierhoffer to recover damages for injuries Debbie Breckenridge sustained when she slipped and fell on the ice, which they allege the funeral home negligently created. The verdict director submitted to the jury by the Breckenridges sets forth the elements of their claim:

> First, *there was ice on the walkway outside the defendant's facility* and as a result the walkway was not reasonably safe, and
> Second, *defendant knew or by using ordinary care should have known of this condition,* and
> Third, defendant failed to use ordinary care to remove it or warn of it, and
> Fourth, such failure directly caused or directly contributed to cause damage to plaintiff Debbie Breckenridge.

The trial court initially entered judgment on the jury verdict in favor of the Breckenridges in the amount of $53,900, plus costs. Thereafter, Meierhoffer filed, and the trial court granted, a Motion for Judgment Notwithstanding the Verdict ("Judgment N.O.V."), thereby nullifying the judgment in favor of the Breckenridges. The Breckenridges appeal.

■ In deciding whether the trial court properly granted Meierhoffer's Motion for Judgment N.O.V., we review the evidence in a light most favorable to the Breckenridges.

*Blake v. Irwin,* 913 S.W.2d 923, 928 (Mo.App. W.D.1996). We presume the Breckenridges' evidence to be true, give them the benefit of all reasonable inferences to be drawn from the evidence, and disregard Meierhoffer's evidence except to the extent that it aids the Breckenridges' case. *Nettie's Flower Garden, Inc. v. SIS, Inc.,* 869 S.W.2d 226, 231 (Mo.App. E.D.1993).

■ The principles of law in a slip and fall case are well established in this state. *Prier v. Smitty's Supermarkets, Inc.,* 715 S.W.2d 579, 580 (Mo.App. S.D.1986). In such cases, liability to a business invitee is premised upon the owner's superior knowledge of a defective or dangerous condition on his premises which results in injury. *Hunt v. Nat'l Super Mkts., Inc.,* 809 S.W.2d 157, 159 (Mo.App. E.D.1991). When the owner of a business has actual or constructive knowledge of a dangerous, foreseeable condition, he has the duty to prevent injuries resulting therefrom. *Sheil v. T.G. & Y. Stores Co.,* 781 S.W.2d 778, 781 (Mo. banc 1989). For the Breckenridges to make a submissible case of negligence, they must establish that Meierhoffer had actual or constructive knowledge of the dangerous or defective condition. *Hunt,* 809 S.W.2d at 159.

■ Each and every fact essential to liability must be shown by substantial evidence. *Garrett v. Overland Garage & Parts, Inc.,* 882 S.W.2d 188, 191 (Mo.App. E.D. 1994). Substantial evidence is competent evidence from which a trier of fact can reasonably decide the case. *Id.* "Liability cannot rest upon guesswork, conjecture, or speculation beyond inferences that can reasonably be drawn from the evidence." *Id.* Accordingly, if a defendant's motion for judgment N.O.V. identifies one or more elements of the plaintiff's case which are not supported by the evidence, the motion is properly granted. *Sch. Dist. of Independence v. U.S. Gypsum,* 750 S.W.2d 442, 446 (Mo.App. W.D.1988).

In sustaining Meierhoffer's Motion for Judgment N.O.V., the trial court found that:

> [i]n order for plaintiff to submit her verdict director to the jury, she was required to provide some evidence that defendant Meierhoffer knew or should have known

that ice was on the sidewalk at the time plaintiff fell. (citation omitted). It was undisputed by the parties that defendant had no actual knowledge of the icy condition. Thus, plaintiff was required to submit evidence that defendant Meierhoffer should have known of the ice. Plaintiff failed to present such evidence.

On appeal, the Breckenridges claim that they did not have to prove Meierhoffer had notice of the icy condition. Specifically, they contend the notice requirement is dispensed with because Meierhoffer created the icy condition when it hosed down the walkways in the middle of the winter. The argument is without merit. The Breckenridges petition alleged, and their verdict director submitted, that Meierhoffer **"knew or by using ordinary care should have known"** of the **icy** condition. As alleged in their petition, and subsequently submitted, it was essential for the jury to so find and, therefore, imperative that there be evidence to support such a finding. *Garrett*, 882 S.W.2d at 191. As noted by the trial court, the Breckenridges failed to present any evidence from which such a finding could be made. Consequently, they failed to prove each and every element of their case, and the trial court properly granted Meierhoffer's Judgment N.O.V. *U.S. Gypsum*, 750 S.W.2d at 446.

Moreover, the same conclusion is compelled if we analyze the Breckenridges contention. They rely on *Prier v. Smitty's Supermarkets, Inc.*, 715 S.W.2d 579, 580 (Mo. App. S.D.1986), *Nickerson v. Moberly Foods, Inc.*, 781 S.W.2d 87, 90 (Mo.App.W.D. 1989), and *Edwards v. Ornest Family Partnership*, 829 S.W.2d 552, 553 (Mo.App. E.D. 1992) for the proposition that actual knowledge is imputed to the property owner "if it is affirmatively shown that an agent of defendant created or was aware of the hazardous condition." *Prier*, 715 S.W.2d at 580. *Edwards* and *Nickerson* cite to *Prier* as authority. *Prier*, on the other hand, cites to *Ward v. Temple Stephens Co.*, 418 S.W.2d 935 (Mo.1967) and *Vinson v. National Super Markets, Inc.*, 621 S.W.2d 373 (Mo.App. E.D.1981) for the proposition. A review of the cases reveals the following.

First, the complete statement in *Prier* is "[t]he defendant store owner is *generally* deemed to have actual notice if it is affirmatively shown that an agent of defendant created or was aware of the hazardous condition." *Prier*, 715 S.W.2d at 580 (emphasis added). The *Prier* court relied on the following statement in *Vinson*, "[d]efendant is generally deemed to have actual notice if it is affirmatively shown that an *agent of the defendant was aware of the existing danger.*" *Vinson*, 621 S.W.2d at 375 (emphasis added). Ultimately, both the *Prier* and *Vinson* courts were relying on the language in *Ward v. Temple Stephens Co.*:

> Generally, defendant is deemed to have had actual notice if it is affirmatively shown that **an agent of the defendant has placed an obstruction in the aisle of a store,** for that act supplies the requirement of notice. In the absence of such a showing, there must be evidence that the defect has existed for a sufficient length of time to constitute constructive notice, or, in other words, to show that defendant *should* reasonably have known of it.

*Ward*, 418 S.W.2d at 938 (citations omitted); (first emphasis added; second emphasis in original).

From the foregoing, it can be seen that the actual rule as announced by our Supreme Court is that a store owner can be deemed to have actual notice of a defective condition on the premises if it is affirmatively shown that the store owner's agent placed an obstruction in the aisle of the store. The store owner is deemed to have actual notice because the agent has actual knowledge of the obstruction. Thus, when the *Vinson* court stated that the defendant is deemed to have actual notice if "an agent of the defendant was aware of the existing danger," *Id.* at 375, it was being consistent with *Ward* because it was a case in which there was a claim that the defendant's agents had knowledge of a shattered bottle on which the plaintiff slipped and fell. *Vinson* merely expanded the *Ward* reasoning that if an agent places an obstruction in an aisle, he knows or should know that a hazardous condition exists, by holding that if an agent has actual knowledge of a spill or obstruction, even if he

is not responsible for causing such condition, he knows or should know that a dangerous condition exists. In either case, the knowledge, i.e., notice, is imputed to the defendant.

When the *Prier* court used the phrase "an agent of the defendant *created* or was aware of the hazardous condition," citing *Ward* and *Vinson,* the court was merely affirming the rule that actual knowledge of a condition on the premises by defendant's agent, which the agent knows or should know may be dangerous, is imputed to the defendant. *Id.* at 580. The assertion in *Ward* that defendant's agent placed a rural mail box in the aisle, the allegation in *Vinson* that defendant's agents had knowledge of a shattered Pinesol bottle, and the contention in *Prier* that defendant's agents were aware of a bleach spill, all involve alleged matters about which the defendants' agents had actual knowledge and knew or should have known to be dangerous conditions.

■■■ From the foregoing, it can readily be seen that *Ward* and its progeny deem an agent's knowledge of a hazardous condition to be actual notice of such condition to the defendant. However, it must be knowledge of a hazardous condition. This is so because a part of a defendant's duty to business invitees[1] is to disclose to them dangerous conditions which are known to the defendant and which likely would not be discovered by the invitees. *Bartel v. Central Markets, Inc.,* 896 S.W.2d 746, 748 (Mo.App. E.D.1995). The concept of duty is dependent on the issue of reasonable foreseeability. *Lavo v. Medlin,* 705 S.W.2d 562, 564 (Mo.App. E.D. 1986). "[T]he duty is to protect the plaintiff from all reasonably foreseeable injuries." *Rothwell v. West Cent. Elec. Co-op., Inc.,* 845 S.W.2d 42, 44 (Mo.App. W.D.1992). Therefore, in the case *sub judice,* in determining whether defendant's agent **"created"** the icy condition so that defendant could be deemed to have had actual knowledge of it, the foreseeability that the acts of defendant's agent would result in the creation of the icy surface and plaintiff's subsequent slip and fall must be evaluated.

The evidence adduced at trial, viewed in the light most favorable to the Breckenridg-

es, reveals that the days immediately preceding the day of the fall were below freezing. On the actual day of the incident, an employee of the Meierhoffer funeral home hosed down the walkways leading to the funeral home. Debbie's uncle determined that the residual water left in the hose after it was turned off had leaked out on the edge of the walkway and froze. Although the funeral home had an underground heating system beneath the walkways to keep them from of ice, it was not activated on the day of the accident because the temperature did not fall below forty degrees. On the day of the fall, three employees were stationed at the front door of the funeral home to make sure the visitors entered the building safely, and the funeral home employees were instructed to check the grounds every hour to hour and a half, to see that they were safe.

The most probative evidence on the issue of foreseeability was that the temperature had been below freezing just days before the fall. However, there is simply nothing in the record to support the proposition that a reasonably prudent person would foresee that a small amount of residual water in a hose would drain out and form ice on a day when the temperature did not fall below 48 degrees. Since the condition was not foreseeable, Meierhoffer's employee cannot be charged with creating the hazard, and Meierhoffer, therefore, cannot be deemed to have had actual notice of the hazardous condition.

The Breckenridges also claim that Meierhoffer breached its duty to "exercise reasonable affirmative care to see that the premises are safe for the reception of the visitor … and inspect the premises to discover possible dangerous conditions of which he does not know." The Breckenridges are, in effect, asking that we apply the standard for constructive knowledge adopted by our Supreme court for self-service type stores in *Sheil v. T.G. & Y. Stores, Co.,* 781 S.W.2d 778 (Mo. Banc 1989). In *Sheil,* the court stated:

> The customers are invited to traverse the aisles and to handle the merchandise. The storeowner necessarily knows that customers may take merchandise into their hands and may then lay articles that no longer interest them down in the aisle.... The

1. All parties concede the Breckenridges were

business invitees on Meierhoffer's premises.

storeowner, therefore, must anticipate and must exercise due care to guard against dangers from articles left in the aisle.... Boxe[s] in the aisle [are] a dangerous, foreseeable condition, and the store had a duty to use due care to protect customers against dangers of this kind.

*Id.* at 780–81. "An owner of a self-service operation has actual knowledge of these problems. In choosing a self-service method of providing items, he is charged with the knowledge of the foreseeable risks inherent in such a mode of operation." *Id.* at 781 (*quoting Ciminski v. Finn Corp.,* 13 Wash. App. 815, 818–19, 537 P.2d 850, 853 (1975)).

The Breckenridges have provided no authority for the proposition that such standard is applicable to a funeral home or facts such as presented in this case. We need not, and do not, decide the issue, because we have already determined that the formation of the ice was not a foreseeable risk. Thus, even if we were to apply the *Sheil* standard, Meierhoffer would still not be subject to liability.

■ Finally, the Breckenridges argue that whether the funeral home was negligent is a question of fact for the jury, not a question of law for the court. As a general rule, "a case should not be withheld from the jury unless the facts in evidence and the inferences fairly deductible therefrom are so strongly against plaintiffs as to leave no room for reasonable minds to differ." *Blake v. Irwin,* 913 S.W.2d 923, 928 (Mo.App. W.D. 1996). Nonetheless, the court must make the initial determination as to whether negligence can be inferred from the facts and whether the plaintiff's evidence establishes a submissible case. *Newcomb v. St. Louis Office for Mental Retardation & Development Disabilities Resources,* 871 S.W.2d 71, 73 (Mo.App.E.D.1994). In the case at bar, the Breckenridges failed to make a submissible case and as such, the trial court properly granted Judgment N.O.V. in favor of Meierhoffer.

The judgment is affirmed.

All concur.