# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3543

_____

| | | |
|---|---|---|
| Harold Martin, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Eastern |
| Wal-Mart Stores, Inc., | * | District of Missouri. |
| | * | |
| Appellant. | * | |

_____

Submitted:  April 21, 1999

Filed:  July 7, 1999

_____

Before BEAM and HANSEN, Circuit Judges, and KOPF,[1] District Judge.

_____

BEAM, Circuit Judge.

Wal-Mart appeals the district court's denial of its motion for a directed verdict, or in the alternative, motion for a new trial, following a jury trial on Harold Martin's slip and fall action.  Wal-Mart asserts that Martin failed to establish that Wal-Mart had either actual or constructive notice of the hazard on the floor; that the jury instructions failed to accurately state Missouri law; and that the jury was prejudiced by improper comments by Martin's counsel during closing arguments.  We affirm.

_____

[1]The Honorable Richard G. Kopf, United States District Court Judge for the District of Nebraska, sitting by designation.

## I. BACKGROUND

We present the facts in a light most favorable to the verdict. Harold Martin was shopping in the sporting goods department of Wal-Mart on the afternoon of September 16, 1993. In front of the sporting goods section, in the store's main aisle, called the "action alley," there was a large display consisting of several pallets stacked with cases of shotgun shells. On top of the cases were individual boxes of shells. As Martin walked past the display with his shopping cart, he slipped on some loose shotgun shell pellets[2] and fell to the floor. Martin lost both feeling and control of his legs. Sensation and control soon returned. However, during the following week, he lost the use of his legs several times, and the paralysis would last for ten to fifteen minutes. Following the last paralytic episode, sensation and control did not return to the front half of his left foot. Martin's doctors have diagnosed the condition as permanent and can offer no treatment.

Just prior to Martin's fall, a Wal-Mart employee walked past the display in the same area where Martin fell. At the time, the sporting goods department should have been staffed with two people, however, only one was in the department. Martin had been in the sporting goods department for ten to fifteen minutes prior to his fall and did not notice anyone handling or tampering with the shotgun shells.

After Martin's fall, the sporting goods clerk searched for the source of the pellets and found a box of shells with one shell missing, and a single shell sitting on top of the display with some of the pellets missing. These were given to his manager. However, Wal-Mart lost the shell and it was unavailable as an exhibit at trial.

---

[2]Shotgun shells fire a quantity of pellets, or "shot," that resemble small BB's.

## II.    DISCUSSION

A United States District Court siting in diversity jurisdiction applies the substantive law of the forum state, in this case, Missouri.  See First Bank of Marietta v. Hogge, 161 F.3d 506, 510 (8th Cir. 1998).  The parties dispute the proper interpretation and application of Missouri law pertaining to slip and fall cases.  Prior to 1989, Missouri followed the traditional rule that required a plaintiff in a slip and fall case to establish that the defendant store had either actual or constructive notice of the dangerous condition.  See, e.g., Ward v. Temple Stephens Co., 418 S.W.2d 935, 938 (Mo. 1967).  The defendant store is deemed to have actual notice if it is shown that an employee created or was aware of the hazard.  See id.  Constructive notice could be established by showing that the dangerous condition had existed for a sufficient length of time that the defendant should reasonably have known about it.  See id.

In 1989, the Missouri Supreme Court decided Sheil v. T.G. & Y. Stores Co., 781 S.W.2d 778 (Mo. 1989) (en banc).  In Sheil, the court followed the example of Ciminski v. Finn Corp., 537 P.2d 850 (Wash. App. 1975), and carved out an exception for slip and fall cases in self-service stores.  See Sheil, 781 S.W.2d at 780.  In Sheil, a customer was injured when he tripped over a box left in an aisle.  There was no evidence regarding what was in the box (other than it seemed heavy for its size), who left the box there, or how long it had been in the aisle.  The defendant store asserted that the plaintiff had not made a submissible case because the plaintiff could not establish that an employee placed the box in the aisle (actual notice), or that the box had been there long enough so that the store should have been aware of it (constructive notice).  See id. at 779-80.  The court held that the plaintiff, because of the nature of the self-service method of operations used by the store, had made a submissible case.

The Sheil court noted that retail store operations have evolved since the traditional liability rules were established.  In modern self-service stores, customers are invited to traverse the same aisles used by the clerks to replenish stock, they are invited

to retrieve merchandise from displays for inspection, and to place it back in the display if the item is not selected for purchase. Further, a customer is enticed to look at the displays, thus reducing the chance that the customer will be watchful of hazards on the floor. See id. at 780-81. "The storeowner (sic) necessarily knows that customers may take merchandise into their hands and may then lay articles that no longer interest them down in the aisle. . . . The storeowner, therefore, must anticipate and must exercise due care to guard against dangers from articles left in the aisle." Id. at 780. The risk of items creating dangerous conditions on the floor, previously created by employees, is now created by other customers as a result of the store's decision to employ the self-service mode of operation. Therefore, "'[a]n owner of a self-service operation has actual notice of these problems. In choosing a self-service method of providing items, he is charged with the knowledge of the foreseeable risks inherent in such a mode of operation.'" Id. at 781 (quoting Ciminiski, 537 P.2d at 853. Thus, in slip and fall cases in self-service stores, the inquiry of whether the danger existed long enough that the store should have reasonably known of it (constructive notice) is made in light of the fact that the store has notice that certain dangers arising through customer involvement are likely to occur, and the store has a duty to anticipate them.

Because of this self-service exception, the court held that, contrary to previous cases, "the precise [amount of] time [a dangerous substance has been on the floor] will not be so important a factor. More important will be the method of merchandising and the nature of the article causing the injury." Id. at 780. The amount of time is even less important if there is evidence that employees of the store were regularly in the area where the accident occurred. See Georgescu v. K Mart Corp., 813 S.W.2d 298, 302 (Mo. 1991) (en banc).

Based upon Missouri law as stated in Sheil, the district court charged the jury in instruction ten that it could find for the plaintiff only if it found that:

First, there were shotgun pellets on the floor of defendant's store and, as
a result, the floor was not reasonably safe, and
Second, defendant knew or by using ordinary care could have known of
this condition, and
Third, defendant failed to use ordinary care to remove the shotgun pellets
or warn of them, and
Fourth, as a direct result of such failure, plaintiff sustained damage.

The court further instructed the jury that:

In a "self service store"[3] as that phrase is used in these instructions, the
"self service store" is deemed to have actual notice of foreseeable risks
of dangers created by merchandise and other foreign substances on the
floor whether those dangers are created by store employees or customers.

Wal-Mart argues that the jury instructions did not accurately reflect Missouri law
regarding slip and fall cases. "We review the district court's jury instructions for abuse
of discretion and on review must determine simply whether the instructions, taken as
a whole and viewed in light of the evidence and applicable law, fairly and adequately
submitted the issues in the case to the jury." Kramer v. Logan County Sch. Dist., 157
F.3d 620, 625 (8th Cir. 1998) We will reverse only if we find that the error affected
the substantial rights of the parties. See id.

Wal-Mart argues that the self-service instruction essentially eliminated the
second paragraph of instruction ten–that Wal-Mart knew or by using ordinary care
could have known of the pellets on the floor–and directed a verdict for Martin because
it allowed the jury to find that Wal-Mart had actual notice of the shot shell pellets on
the floor as a matter of law. Martin on the other hand, claims that Sheil does in fact

---

[3]It was conceded that Wal-Mart is a self-service store for purposes of Missouri
law.

charge store owners with actual notice of dangerous conditions on the floor created by customers or employees as long as the condition was foreseeable. Neither is correct.

A closer review of <u>Sheil</u> is required to resolve this issue. The court in <u>Sheil</u> stated that in a self-service type of store:

> It is much more likely that items for sale and other foreign substances will fall to the floor. Clerks replenish supplies by carrying them through the area the customer is required to traverse when selecting items. Customers are naturally not as careful in handling the merchandise as clerks would be. They may pick up and put back several items before ultimately selecting one. Not unreasonably they are concentrating on the items displayed, which are usually arranged specifically to attract their attention. Such conditions are equally typical of self-service restaurants and the most common self-service operation, the modern supermarket. An owner of a self-service operation has *actual notice of these problems*. In choosing a self-service method of providing items, he is *charged with the knowledge of the foreseeable risks* inherent in such a mode of operation.

<u>Sheil</u>, 781 S.W.2d at 781 (emphasis added). <u>Sheil</u> does not state that the store, as a matter of law, has actual notice of a particular dangerous condition simply because it is caused by merchandise on the floor. Rather, the store has the more general actual notice that dangerous conditions are often created by both customers and employees in foreseeable ways. Actual notice of a particular existing hazard creates an immediate duty to protect or warn customers of that hazard. See <u>Hayes v. National Super Markets, Inc.</u>, 612 S.W.2d 819, 822 (Mo. App. 1981). In contrast, the actual notice imposed by <u>Sheil</u>, creates an affirmative duty to anticipate and, exercising due care, prevent or seek out those dangerous conditions, then protect or warn customers once the particular danger is found. See <u>Sheil</u>, 781 S.W.2d at 780.

-6-

Though the self-service store instruction may not be a model of clarity, we find that the instructions, taken as a whole, adequately charged the jury under Missouri law. The instructions do not state that the store has actual notice of a particular danger, or even dangers in general. Rather, it states that the store "is deemed to have actual notice of *foreseeable risks* of dangers." Although this phrase could be read to mean "risks caused by foreseeable dangers," a less strained reading is "foreseeable risks that can give rise to dangerous conditions," that is to say the store knows that merchandise is likely to wind up on the floor and constitute a danger. This second reading is entirely consistent with Sheil.

This "knowledge of foreseeable risks" imposed by Sheil does not impact whether the store has actual notice of the shotgun pellets on the floor. This knowledge instead informs the degree of vigilance or effort necessary to constitute the due care described in the second paragraph of instruction ten–whether or not Wal-Mart exercised ordinary care when, knowing that that type of danger was likely to occur, it failed to detect a dangerous condition. Thus a store's liability, absent actual notice of a specific danger, "is predicated on the foreseeability of the risk and the reasonableness of the care extended toward business invitees, which, in Missouri, is now a question of fact to be determined by the totality of the circumstances." Spencer v. Kroger Co., 941 F.2d 699, 703 (8th Cir. 1991).

Viewing the instructions together, the jury had to find that: it was foreseeable that the contents of a shot shell could wind up on the floor; that the pellets created an unsafe condition; that Wal-Mart knew of the pellets or, using ordinary care, and knowing that that type of danger is likely to occur, should have discovered them; that Wal-Mart did not remove them or warn Martin of the danger; and that Martin suffered injury as a result. This is an accurate statement of Missouri law and we find no error in the jury instructions.

Wal-Mart next claims that Martin failed to present a submissible case because he failed to establish that Wal-Mart had actual or constructive notice of the pellets in the action aisle. We disagree. We find there is substantial evidence of constructive notice in the record. Martin slipped on shotgun shell pellets on the floor which were next to a large display of shotgun shells immediately abutting the sporting goods department. The chance that merchandise will wind up on the floor (or merchandise will be spilled on the floor) in the department in which that merchandise is sold or displayed is exactly the type of foreseeable risk described in Sheil. Under Sheil, Wal-Mart has notice that merchandise is likely to find its way to the floor and create a dangerous condition, and it must exercise due care to discover this hazard and warn customers or protect them from the danger. Watching for hazards on the floor is part of the job duties of every Wal-Mart employee. They are trained to anticipate and protect customers from these hazards. The sporting goods department was understaffed at the time. Five minutes before Martin fell, the sporting goods clerk had walked through the same part of the aisle where the fall occurred. Just before Martin fell, a Wal-Mart employee walked through the same area and did not notice the hazard, or did nothing about it. The sporting goods clerk testified that the pellets could have been on the floor for up to an hour. The department was not extremely busy, and though the clerk had inspected and straightened up the exercise equipment area, he had not inspected the display in the action aisle. The black pellets were scattered on a white tile floor with gray stripes. The display and the pellets were in the action alley, the highest traffic area of the store, where the risk was presumably greatest, thus calling for greater vigilance in order to meet the standard of ordinary care. Even assuming that the hazard was created by a customer, a jury could easily find, given that it had notice that merchandise is often mishandled or mislaid by customers in a manner that can create dangerous conditions, that, had Wal-Mart exercised due care under the

circumstances, it would have discovered the shotgun pellets on the floor.[4]  See Georgescu, 813 S.W.2d at 302.


Wal-Mart also claims the district court committed reversible error by allowing allegedly improper examination of two witnesses, and inflammatory and improper argument by Martin's counsel during closing arguments.  We have carefully reviewed the record and find any error to be harmless.

## III.   CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.


A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]Although Wal-Mart presented evidence that the half-empty shell that was found appeared to be pried open, presumably by a customer, Martin demonstrated that a shell could also have been cut open by an employee when cutting open cases to build the display.  If that were the case, the traditional rule would apply and Wal-Mart would have actual notice of that particular dangerous condition because it was created by one of its agents.  See Ward, 418 S.W.2d at 938; Prier v. Smitty's Supermarkets, Inc., 715 S.W.2d 579, 580 (Mo. App. 1986).