# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-2954

_____

James Larson,                                    *
                                                 *
            Plaintiff-Appellee,                  *
                                                 *
      v.                                         *
                                                 *
Farmers Cooperative Elevator of                  *
Buffalo Center, Iowa, an Iowa                    *
Cooperative, Farmers Coop Co.,                   *
Ledyard, Iowa, an Iowa Cooperative,              *
                                                 *  Appeal from the United States
            Defendants-Appellants.               *  District Court for the
                                                 *  Northern District of Iowa
                                                 *
_____                                      *
                                                 *
No. 99-3170                                      *
                                                 *
_____                                      *
                                                 *
James Larson,                                    *
                                                 *
            Plaintiff-Appellant,                 *
                                                 *
      v.                                         *
                                                 *
Farmers Cooperative Elevator of                  *
Buffalo Center, Iowa, an Iowa                    *
Cooperative, Farmers Coop Co.,                   *
Ledyard, Iowa, an Iowa Cooperative,              *
                                                 *
            Defendants-Appellees.                *

_____

Submitted: March 13, 2000
Filed: May 11, 2000
_____

Before McMILLIAN and HEANEY, Circuit Judges, and BOGUE,[1] District Judge.
_____

BOGUE, District Judge.

## Introduction

This case involves cross-appeals from a decision in the United States District Court for the Northern District of Iowa.[2] Appellant-defendant Farmers Cooperative of Buffalo Center ("Buffalo Center") and Farmers Cooperative of Ledyard, ("Ledyard") claim the district court erred in denying a motion for a new trial. Buffalo Center and Ledyard, hereinafter Elevators or Coops, challenge jury instructions related to the question of adequate assurance. Appellant-plaintiff Larson filed a cross-appeal. Larson contends that the appeal submitted by the Elevators was untimely and the district court abused its discretion in allowing the appeal. We affirm.

## I.

At trial the parties presented the following evidence: Jim Larson farms corn and soybeans on land near Armstrong, Iowa. He plants his corn in and around May of

---

[1]The Hon. Andrew W. Bogue, Senior United States District Judge for the District of South Dakota, sitting by designation.

[2]The Hon. Mark W. Bennett, United States District Judge for the Northern District of Iowa.

each year and attempts to harvest it by Thanksgiving. Hoping to wait for a higher price and to avoid the long lines at elevators in the fall, Larson typically will dry and store the corn, waiting until the following summer to sell. In 1993, Larson harvested around 6,500 bushels of corn. In 1994, Larson was able to harvest around 50,000 bushels and 80,000 bushels in 1995.

In the summer of 1994, Larson hired Steve Loggeman to aid in the marketing of his corn. Based on prior yields, it was determined that 50,000 bushels would be available for delivery each year. Larson eventually developed a plan to deliver 25,000 bushels of corn to each of two different elevators each year. Farmers Cooperative Elevator of Buffalo Center, Iowa, and Farmers Cooperative Company, Ledyard, Iowa, are Iowa cooperatives with their principal place of business in Buffalo Center and Ledyard respectively. Larson considered the two Elevators and ultimately planned to deliver corn to each of them.

To complete the plan, Larson and Loggeman created documents called a Flex Hedge Program. Each program contained a set of offers to enter into Hedge to Arrive, or HTA[3], contracts. The Ledyard and Buffalo Center elevators both accepted programs with similar HTA provisions and were completed by late 1994. Each HTA would list an initial delivery date and an initial price. When the delivery date approached, Larson would have the option of delivering corn at the set HTA price or selling his grain for cash. If Larson chose to sell at the cash price rather than the HTA price, the contract would then be "rolled," or postponed. When a contract was rolled, a new delivery date

---

[3]HTA contracts are made for certain commodities such as corn or soybeans. They contemplate the delivery of a commodity which may or may not presently exist at some unknown time in the future. The amount to be delivered is determined at the outset, but the time and price is not. A tentative time and price for delivery is initially established. This initial time and price is determined by the price and delivery month of a futures contract traded on the Chicago Board of Trade (CBOT). The time for delivery can be "rolled," or pushed, from one month to a later month.

corresponding to a delivery date for a futures contract on the Chicago Board of Trade (CBOT) would be set. A new price indicating the spread, or difference, between the initial delivery date and the new delivery date would be established according to CBOT figures.

Larson's right to roll was part of the standing agreement with the Elevators. According to Larson, the ability to roll was integral to the plan he and Loggeman had created. Larson had entered an HTA with Buffalo Center referencing 110,000 bushels of corn and an HTA with Ledyard referencing 100,000 bushels of corn. The HTAs had an initial delivery date in 1995 or 1996. If Larson could not roll, his plan to deliver 50,000 bushels per year cumulatively to the Elevators would be transformed into a plan to deliver 210,000 bushels in 1995 and 1996. Larson contends that because his original plan was to deliver at most 25,000 bushels to each Elevator each year it was necessarily required that he be able to roll the HTAs into future crop years.

Buffalo Center and Ledyard hedged their commitment to buy from the producer by entering a corresponding short position on the CBOT. Such short positioning left the possibility of margins that would need to be covered. A margin is a deposit that a holder of a CBOT contract must make as insurance of performance. Larson's contracts with both Buffalo Center and Ledyard indicated the Elevators were responsible for possible margins. This was supported by the testimony of two individuals. Derald Goetz was a general marketer and grand merchandiser who worked for Ledyard between 1989 and 1996. Dean Beenken was a member and secretary of the Buffalo Center board of directors. Both testified that each Elevator had at least constructive knowledge of an obligation to cover margins under the marketing agreements created by Larson.

In 1995 Larson made deliveries of 25,000 and 20,000 bushels of corn to Ledyard and Buffalo Center respectively. Similarly, 25,000 bushels of corn were delivered to Ledyard in 1996. 38,000 bushels were delivered to Buffalo Center in 1996. By early

4

1996, market prices increased which led to a decrease in the value of the Elevators' short positions. The Elevators were forced to make increasingly large margin payments to maintain their short positions. Testimony at trial evidenced the concern held by the Elevators as to the margin amounts each had to cover.

On June 4, 1996, Ledyard sent a letter entitled "Demand for Adequate Assurance of Performance" to Larson. The letter stated its concern surrounding the substantial sums the Elevator had committed to covering margins under the Flex Hedge Contracts. The Elevator stated that it had covered these margins based on the contractual agreement between Larson and Ledyard. Ledyard stated that various market and non-market conditions and developments created reasonable grounds for insecurity with respect to Larson and others who held Flex Hedge Contracts with the Elevator. Because of such insecurity, Ledyard demanded that Larson provide the Elevator with adequate written assurances of his intent to perform under the Flex Hedge Contracts.

Ledyard specifically demanded adequate assurance of Larson's performance related to: (1) his obligation to deliver the contractually stated number of bushels of grain to Ledyard on or before the delivery dates identified in an attached schedule; and (2) his obligation to fully reimburse Ledyard for all commissions and margins it had paid on his behalf, as well as all other costs incurred by the Elevator pursuant to the contract, less any reimbursement already received by the Elevator. Ledyard included a list of items that it would consider constituting adequate assurance[4] if completed on

---

[4]Adequate assurance according to Ledyard's letter would include:

1.      Payment in full of all commissions and margins previously paid by the Coop on your behalf and all other costs incurred by the Coop pursuant to the Contracts applicable to the 1996 production year; or a binding letter of credit, in form and substance reasonably acceptable to the Coop, from an institutional lender to the Coop, obligating such lender to pay the Coop total amount of such

or before the end of business on June 14, 1996. Ledyard also stated it would treat his refusal to provide such assurances made by that date as a repudiation of the HTA agreement.

On September 11, 1996, Buffalo Center sent a similar letter to Larson through Mr. George F. Davison, who was then Larson's attorney. Buffalo Center identified similar difficulties due to market conditions, including increasing commodity prices, limited grain supplies, and overall market volatility. The letter continued, stating that the Coop had reason to believe that Larson may be unable or did not intend to honor his contractual commitments. Buffalo Center similarly requested receipt of certain items to constitute proof of adequate assurance.[5] Similar to Ledyard, Buffalo Center

commissions, margins, and other costs; <u>and</u>

2.    Payment in full of the amount necessary to bring the "Average contract Price" under all Contracts applicable to production years following 1996 up to a price which is $.50 below the futures contract price in the applicable futures contract month on the date of payment; or a binding letter of credit, in form and substance reasonably acceptable to the Coop, from an institutional lender to the Coop, obligating such lender to pay the Coop the total amount of such commissions, margins, and other costs. . .; <u>and</u>

3.    <u>Execution of an agreement</u>, in form and substance reasonably acceptable to the Coop, <u>whereunder you agree to pay all commissions and margins under the Contracts</u> from the date of such agreement to the date of actual delivery under the Contracts; <u>and</u>

4.    A copy of this letter, signed by you where set forth below, agreeing to deliver to the Coop on or before the "Delivery Dates" identified on Schedule A, the stated number of bushels of grain as set forth in the Contracts, in satisfaction of your delivery requirements thereunder.

(Emphasis added).

[5]Buffalo Center gave only two criteria for Larson to demonstrate adequate assurance:

stated that it would treat Larson's refusal to provide adequate assurance as a repudiation of the contracts.

On September 24, 1996, Larson filed a complaint in the United States District Court for the Northern District of Iowa. Larson requested a declaratory judgment declaring the HTAs were illegal under the Commodities Exchange Act (CEA). 7 U.S.C. § 1 et. seq. Larson also brought breach of contract claims against both Elevators. The Elevators answered on February 6, 1997. Both raised affirmative defenses and brought counterclaims against Larson. Each counterclaim alleged breach of contract due to Larson's repudiation by failing to give adequate assurance of delivery as proposed in their earlier letters. Ledyard sought damages of $120,750 plus interest and Buffalo Center sought damages of $93,350 plus interest.

On October 2, 1998, the district court ruled on pending summary judgment motions submitted by both parties. The Coops were awarded summary judgment in their favor on Count I of Larson's complaint, which had sought declaratory judgment that the HTA contracts that he entered into with the Coops for the sale and purchase of grain were void, voidable, and unenforceable because they were in irreconcilable conflict with the CEA. The district court found that as a matter of law the HTAs

1. <u>Payment in full of all commissions and margins previously paid by the Coop</u> on Mr. Larson's behalf in all other costs incurred by the Coop pursuant to the Contracts; or a binding letter or credit, in form and substance reasonably acceptable to the Coop, from an institutional lender to the Coop, obligating such lender to pay the Coop the total amount of such commissions, margins and other costs; and
2. A copy of this letter, signed by Mr. Larson where set forth below, agreeing to deliver to the Coop on or before the "Delivery Dates" identified on Schedule A, the stated number of bushels of grain as set forth in the Contracts, in satisfaction of his delivery requirements thereunder.

(Emphasis added).

Larson entered into with Buffalo Center and Ledyard were "cash forward contracts" not within the regulatory purview of the CEA.

After the summary judgment ruling, Larson had a remaining claim of breach of contract asserting nominal damages. Buffalo Center and Ledyard retained breach of contract claims against Larson. The district court retained supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The case was tried in the United States District Court for the Southern District of Iowa on May 3, 1999, although it remained a Northern District case. The parties agreed to waive any venue problems in trying a Northern District case in the Southern District of Iowa.

At the close of evidence, a jury instruction conference was held pursuant to Fed. R. Civ. P. 51. At that time the district court assembled its Final Jury Instructions. Counsel for the Elevators objected to the court's proposed jury instructions four and five.[6] Buffalo Center and Ledyard based such an objection on the contention that the

---

[6]The objected to instructions were Final Jury Instructions 4 and 5. Instruction 4 stated:

> 4. You are also instructed that it is unlawful to enter into a contract for the purchase or sale of commodity futures unless the transaction is conducted on or is subject to the rules of the Chicago Board of Trade or other designated contract market. Therefore, if you find that a demand for assurances constituted a demand to enter into a purchase or sale of a commodity futures that was *not* subject to the rules of a designated contract market (i.e., it constituted a demand for an "off-exchange" transaction), you may find that such a demand was unlawful and unreasonable, and therefore constituted a breach of the underlying HTA contract, if the Coop making the demand refused to perform the underlying HTA further without such a transaction.

As stated by the district court in its Memorandum Opinion and Order Regarding

8

evidence did not support the giving of an instruction which stated that a demand for adequate assurance constituted a demand to enter into a purchase or sale of commodity futures, and that there was no evidence on the record that any such demand was made. The Elevators also objected that there was no evidence in the record that pursuant to such a demand, a party or one of the producers would actually take over ownership of a commodity futures position on the Board of Trade that was either in the name of the Coop or in the Coop's brokerage account.

The objections to jury instructions four and five were overruled. The jury was read the Final Jury Instructions in their entirety. The jury returned a verdict in favor of Larson awarding him nominal damages of $1 each against Ledyard and Buffalo Center. The jury also found in favor of Larson on each of the Coop's claims for breach of contract. Judgment was entered upon the jury's verdict on May 10, 1999. On May 24, 1999, the Elevators filed a motion for a new trial pursuant to Fed. R. Civ. P. 59(a) and (e). The basis for such a motion was that the Final Jury Instructions were improper.

On June 11, 1999, the district court denied the Motion for New Trial. Elevators filed a Notice of Appeal on July 14, 1999. A Motion for Extension of Time to File Notice of Appeal was filed by Elevators on August 2, 1999, which the district court granted on August 5, 1999. Larson then objected based on the timeliness issue.

## II.

---

Defendant's Motion for New Trial, the "pertinent part of Final Jury Instruction No. 5 was similar, but stated that if the jury found a Coop had made a demand to enter into an 'off-exchange' transaction, the jury could also find that such a demand was unlawful and unreasonable, and therefore the Coop that made the demand could not prove a failure to give adequate assurances, on Larson's part, based on refusal to enter into such a transaction, and hence could not prove a breach of contract by Larson on the ground that he had refused to enter into such a transaction."

Larson has filed cross-appeal No. 99-3170. He argues the district court abused its discretion in exercising its equitable powers and allowing the notice of appeal despite its claimed untimeliness. The court carefully considered Larson's arguments

below and applied the standard announced by the Supreme Court in <u>Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,</u> 507 U.S. 380 (1993). Under the facts of this case, the court's findings were not erroneous. Finding no abuse of discretion in the district court's analysis, we conclude that Larson's arguments related to the issue of timeliness must fail.

### III.

Appeal No. 99-2954 comes in the form of review of the district court's denial of a motion for new trial. Authority to grant a new trial pursuant to Federal Rule of Civil Procedure 59 is fully within the discretion of the district court. <u>Douglas County Bank & Trust Co. v. United Financial Incorporated,</u> --- F.3d --- , 2000 WL 295111 *4-*5 (8th Cir. 2000); <u>see also</u> <u>Gray v. Bicknell,</u> 86 F.3d 1472, 1480 (8th Cir. 1996). A motion for new trial will be granted when a miscarriage of justice occurred in the first trial. <u>Gray,</u> 86 F.3d at 1480. Such a miscarriage of justice occurs when there is insufficient evidence to support the verdict. <u>Douglas County Bank & Trust Co.,</u> 2000 WL 295111 at *5 (citing <u>First State Bank of Floodwood v. Jubie,</u> 86 F.3d 755 (8th Cir. 1996)). A district court's denial of a motion for a new trial will not be reversed unless there has been a clear abuse of discretion. <u>Keenan v. Computer Associates International, Inc.,</u> 13 F.3d 1250, 1269 (8th Cir. 1994).

Elevators argue the district court erred by failing to grant Elevators' motion for a new trial. In support of that argument, Elevators cite the district court's instruction of the jury regarding "off exchange" transactions being illegal under the Commodities Exchange Act in the context of the Elevators request for adequate assurance from

Larson. Elevators contend the district court erred in submitting instructions four and five to the jury.

## IV.

On appeal, Elevators maintain the evidence in record did not support portions of each jury instruction. Elevators contend the instructions were a correct statement of law, but were not applicable to the factual issues confronting the jury question of breach of contract. Specifically, Elevators submit the evidence demonstrated the letters sent to Larson referred to his HTA agreements. Elevators maintain that any demands for assurances should not be analyzed separately from the HTA contracts, and that the district court had already held that the HTAs were not "off-exchange" futures contracts. Therefore, Elevators submit that the evidence did not support an instruction that their requests for adequate assurance could constitute a demand to enter into an off-board purchase or sale of commodities futures. Elevators also argue that there is no evidence in the record that Larson would take over ownership of a commodity futures position on the CBOT that was either in the name of the Coop or in the Coop's brokerage account.

We review the district court's jury instructions for abuse of discretion. Grain Land Coop v. Kar Kim Farms, Inc., 199 F.3d 983, 995 (8th Cir. 1999). The Court of Appeals must determine whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, "fairly and adequately submitted the issues in the case to the jury." Id. (quoting White v. Honeywell, Inc., 141 F.3d 1270, 1278 (8th Cir. 1998)).

The evidence submitted during trial supports the district court's decision to utilize jury instructions four and five. The June 4, 1996, and September 24, 1996 letters both contain a demand for assurances specifically requesting "adequate assurances hereunder" payment of all commissions and margins previously paid by the

11

Coop on Mr. Larson's behalf and all other costs incurred by the Coop pursuant to the contracts. Plaintiff's Trial Exh. 32, at 2; Plaintiff's Trial Exh. 61, at 2. Each demand for assurances requested that Larson pay all costs of each Elevator's futures position on the CBOT, which was taken by each Elevator to "hedge" its contract with Larson. Both letters sent to Larson therefore could be read by a jury as demanding that Larson assume the Elevators' losses on each of their respective short positions. Furthermore, there was no indication that a purchase or sale of the Elevators' futures position was conducted pursuant to rules of a designated contract market. Therefore, if the jury found there was such a demand, the jury could have considered it a demand to engage in an "off-exchange" transaction. The district court instructed the jury accordingly. The language within each jury instruction also adequately tracked the statutory language of the Commodities Exchange Act, found at 7 U.S.C. § 6(a)[7]. Viewed in light

_____

[7]At 7 U.S.C. § 6(a), the Commodity Exchange Act states:

Unless exempted by the Commission pursuant to subsection (c) of this section, it shall be unlawful for any person to offer to enter into, to enter into, to execute, to confirm the execution of, or to conduct any office or business anywhere in the United States, its territories or possessions, for the purpose of soliciting or accepting any order for, or otherwise dealing in, any transaction in, or in connection with, a contract for the purchase or sale of a commodity for future delivery (other than a contract which is made on or subject to the rules of a board of trade, exchange, or market located outside the United States, its territories or possessions) unless -
        (1) such transaction is conducted on or subject to the rules of a board of trade which has been designated by the Commission as a "contract market" for such commodity; . . . .
(emphasis added).

Jury instructions 4 and 5 contained the following language similar to the above statute:

You are instructed that it is unlawful to enter into a contract for the purchase or sale of commodity futures unless the transaction is conducted on or is subject to

12

of the applicable law and evidence presented by Elevators and Larson, the district court did not abuse its discretion in allowing jury instructions four and five. As long as the jury is correctly instructed on the substantive issues in the case, the language and form of jury instructions are committed to the sound discretion of the district court. Scamardo v. Scott County, 189 F.3d 707, 711 (8th Cir. 1999). See also Williams v. Valentec Kisco, Inc., 964 F.2d 723, 731 (8th Cir.1992)).

## V.

When reviewing a jury instruction, this court must "determine whether the instruction fairly and adequately states the applicable law when reading the instruction as a whole." Stockmen's Livestock v. Norwest Bank of Sioux City, 135 F.3d 1236, 1245-1246 (8th Cir. 1998) (quoting First Dakota Nat'l Bank v. St. Paul Fire and Marine Ins. Co., 2 F.3d 801 (8th Cir. 1993)). Before an appellant is entitled to any relief on the ground that the district court committed error due to its instruction of the jury, the error must be prejudicial. Stockmen's Livestock, 135 F.3d at 1246. Even if an error occurred, we reverse only if the error affected the substantial rights of the parties. Frazier v. Iowa Beef Processors, Inc., 200 F.3d 1190, 1193 (8th Cir. 2000); see also Martin v. Wal-Mart Stores, Inc., 183 F.3d 770, 773 (8th Cir.1999).

It is the contention of the Elevators that they were prejudiced because the jury was not given the necessary background to address the instructions, including the definition of certain terms applicable to the CEA. Elevators contend that without

_____

the rules of the Chicago Board of Trade or other designated contract market. Therefore, if you find that a demand for assurances constituted a demand to enter into a purchase or sale of commodity futures that was not on or subject to the rules of a designated contract market (i.e. it constituted a demand for an "off-exchange transaction"), you may find that such a demand was unlawful and unreasonable, . . .
(emphasis added).

13

proper guidance from the court the jury was free to make a legal interpretation of the CEA and its applicability to the Elevators. We reject the contention that Elevators were prejudiced by the instructions. As discussed, evidence submitted during trial, as well as the district court's interpretation of applicable law, merited the instructions. The instructions also included the appropriate elements for contract and breach of contract under Iowa law. When reading the instructions as a whole, they fairly and adequately stated the law applicable to the dispute. Stockmen's Livestock, 135 F.3d at 1246. The district court did not commit error in submitting the instructions, let alone error affecting the substantial rights of the Elevators. Kramer v. Logan County School Dist. No. R-1, 157 F.3d 620, 625 (8th Cir. 1998). A miscarriage of justice has not occurred. Id.

## VI.

For the reasons stated in this opinion, we find the district court did not abuse its discretion in exercising its equitable powers and allowing Elevators' notice of appeal. We also believe the district court properly instructed the jury, and that judgment was properly entered upon the jury's verdict in favor of Larson. We affirm the judgment of the district court in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

14