# United States Court of Appeals

### For the Eighth Circuit

_____

## No. 24-1289

_____

Hoffmann Brothers Heating and Air Conditioning, Inc.

*Plaintiff - Appellant*

v.

Hoffmann Air Conditioning & Heating, LLC; Thomas E. Hoffmann

*Defendants - Appellees*

------------------------------

Thomas E. Hoffmann; Hoffmann Air Conditioning & Heating, LLC

*Counter Claimants - Appellees*

v.

Hoffmann Brothers Heating and Air Conditioning, Inc.; Robert J. Hoffmann; Chris Hoffmann; Robert Joseph Hoffmann, Jr.

*Counter Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 16, 2025
Filed: September 8, 2025

_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.
_____

STRAS, Circuit Judge.

What's in a name?  After one brother left the family business, Hoffmann Brothers Heating and Air Conditioning, Inc., and Hoffmann Air Conditioning & Heating, LLC, went to court to find out.  Following an eight-day trial on various trademark, unfair-competition, and contract claims, one side challenges the parts of the judgment with which it disagrees.  We affirm.

I.

What started as a family dispute turned into a federal lawsuit.  Tom and Robert Hoffmann, along with their father, were partners in Hoffmann Brothers.  Decades later, Robert decided to buy out Tom and they ended up in state court.  Eventually, they settled.

The agreement they reached covers some of the issues before us today.  It included a non-disparagement clause, a non-solicitation clause, and a prohibition on Tom's use of the "Hoffmann" name for four years in any heating, ventilation, and cooling business.

After the state litigation ended, Tom started one called "Engineered Solutions."  Then, after four years, he began using the name "Hoffmann Air Conditioning & Heating, LLC" (Hoffmann AC).  The move did not sit well with Robert and Hoffmann Brothers, which sued Tom and Hoffmann AC in federal court.

The first claim, for copyright infringement, arose out of Hoffmann AC's social-media ads.  Apparently, an advertising agency mistakenly used pictures of uniformed Hoffmann Brothers employees in them.  Hoffmann Brothers believed that Hoffmann AC must have profited from the use of those images.

The trademark-infringement, unfair-competition, and breach-of-contract claims, on the other hand, primarily focused on Tom's use of the Hoffmann name. Evidence at trial showed that customers sometimes called the wrong company. Hoffmann Brothers customers would call for service, only to discover their mistake when the other company arrived.

Based on a lack of evidence supporting the copyright claim, the district court[1] granted summary judgment to Tom and Hoffmann AC. The others went to trial. The jury reached a mixed verdict, with Hoffmann AC mostly coming out on top, including on the trademark-infringement claims. Both Tom and Robert sought attorney fees for the claims they had won, but the court did not grant any. Unhappy with the mixed outcome and the denial of fees, Robert and Hoffmann Brothers appeal the parts of the case they lost.

## II.

One of those is the copyright claim, which did not make it past summary judgment. *See* 17 U.S.C. §§ 106, 501. The district court concluded that Hoffmann Brothers did not sufficiently prove damages from Hoffmann AC's use of the photographs. Reviewing the summary-judgment ruling de novo, we must decide whether there was enough to create a "genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation omitted). We agree with the district court that the answer is no.

If a work is unregistered, like these photographs were, a plaintiff in a copyright-infringement case must prove "actual damages," "profits of the infringer that are attributable to the infringement," or both. 17 U.S.C. § 504(b) (allowing the recovery of profits to the extent they "are not taken into account in computing the actual damages"); *see id.* § 412 (conditioning statutory damages on registration). In

---

[1]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri.

short, a showing that the infringement had an impact on the parties. *See id.* § 504(b) (requiring a connection to "the infringement" either way).

The first category, actual damages, "can . . . be thought of as the anticipated amount that the copyright holder would have received" had the infringement never occurred. *ECIMOS, LLC v. Carrier Corp.*, 971 F.3d 616, 632 (6th Cir. 2020). Although "[t]he value of the infringer's use" can be a "permissible basis for estimating actual damages," *Deltak, Inc. v. Advanced Sys., Inc.*, 767 F.2d 357, 360– 61 (7th Cir. 1985), Hoffmann Brothers' only evidence was the monthly fee Hoffmann AC paid to its marketing agency, with no explanation of why it was a reasonable estimate of what it lost. It did not reflect the "*value* of the infringer's use," which would be the *benefit* to Hoffmann AC from posting the photographs. *Id.* at 360 (emphasis added). Nor did it measure the *harm* to Hoffmann Brothers from their use. It would have been too big of a leap for the jury to estimate the effect of the infringement on either party from Hoffmann AC's marketing fees. *See Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co.*, 978 F.2d 430, 432 (8th Cir. 1992) (holding that the copyright owner's evidence of actual damages was "too speculative").

The other category, "the additional profits of the infringer," turned out to be just as difficult to prove. 17 U.S.C. § 504(a)(1). Although the statute requires the copyright owner "to present proof *only* of the infringer's gross revenue," we expect more. *Id.* § 504(b) (emphasis added). The evidence must also connect the infringement to the gross revenue earned, what courts call the causal-nexus requirement. *See Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789, 796 (8th Cir. 2003); *see also Mackie v. Rieser*, 296 F.3d 909, 911 (9th Cir. 2002) (recognizing that a copyright owner must "proffer some evidence to create a triable issue" about whether the "infringement at least partially caused the [revenue] that the infringer generated"). Only then does the burden shift to the infringer to apportion "the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b); *see Andreas*, 336 F.3d at 796.

Hoffmann Brothers failed to connect the dots. It provided an expert report documenting Hoffmann AC's revenue over a two-year time frame, which it then used to estimate the approximate revenue for the month that the infringement allegedly occurred. It did not, however, link the ads to the gross revenue earned that month.

It could have done so in several ways. One would have been to show that Hoffmann AC gained customers "because [its] ad[s] had included" the photographs. *I Dig Texas, LLC v. Creager*, 98 F.4th 998, 1008 (10th Cir. 2024). Or it could have proven that the infringement "actually influenced . . . purchasing decisions." *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 714 (9th Cir. 2004). Finally, it could have compared month-to-month revenue to see if the alleged infringement coincided with an unexpected short-term spike in business. *See Andreas*, 336 F.3d at 797. Without evidence of one of those connections, the trier of fact could only have guessed about the "profits of the infringer . . . attributable to the infringement," 17 U.S.C. § 504(b), which made the claim "too speculative" to give to a jury, *Pfanenstiel Architects, Inc.*, 978 F.2d at 432. *Cf. Andreas*, 336 F.3d at 797 (concluding that a nexus was established through evidence that the commercial using the infringing images was "enthusiastically presented" to dealers, "sales . . . were above" the company's projections, the commercial was "high[ly] rat[ed]," and the company paid the advertisers a "substantial bonus based on [its] success").

III.

Deciding the trademark claims, on the other hand, required no guesswork. Recall the names of the two companies: Hoffmann Brothers Heating and Air Conditioning, Inc., and Hoffmann Air Conditioning & Heating, LLC. The question was whether they were so similar that they caused customer confusion. The jury said no, but Hoffmann Brothers believes the instructions led it astray, an argument we review for an abuse of discretion. *See Golan v. FreeEats.com, Inc.*, 930 F.3d 950, 959 (8th Cir. 2019). The standard is "whether the instructions, taken as a whole and viewed in light of the evidence and applicable law, fairly and adequately

submitted the issues in the case to the jury." *Larson v. Farmers Co-op Elevator of Buffalo Ctr.*, 211 F.3d 1089, 1095 (8th Cir. 2000) (citation omitted). Here, they did.

A trademark is "any word, name, symbol, or device, or any combination thereof" used to "identify and distinguish" someone's goods and "indicate the[ir] source." 15 U.S.C. § 1127; *see* Mo. Rev. Stat. § 417.005(6). It allows customers to recognize the products and services "they wish to purchase, as well as those they want to avoid." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 146 (2023) (citation omitted). Under both federal and Missouri law, infringement occurs when someone else uses one in a way "likely to cause confusion" about the "origin" of "goods [or] services." 15 U.S.C. § 1125(a)(1)(A); Mo. Rev. Stat. § 417.056(1).

Customer confusion can occur at various times. One of them is before a sale, what the law calls initial-interest confusion.[2] *See Sensient Tech. Corp.*, 613 F.3d at 766 (describing it as "confusion [that] creates an initial customer interest, even though no actual sale may be finally completed due to the confusion"). For us, the theory is of recent vintage, although courts around the country have been applying it for about half a century. *Compare id.*, *with Grotrian, Helfferich, Schulz, Th. Steinweg Nachf. v. Steinway & Sons*, 523 F.2d 1331, 1342 (2d Cir. 1975).

Our variation of the rule, however, is different. When customers are "sophisticated[,] and exercise a relatively high degree of care in making their purchasing decisions," it is "less likely" that they will experience "initial confusion." *Sensient Tech. Corp.*, 613 F.3d at 766. Even if there is reason to question whether our "sophistication exception" *should* exist, there is no doubt it does. *See Select*

---

[2]Missouri courts have not discussed, much less adopted, this theory. For purposes of this appeal, however, we assume without deciding that they would do so. *See, e.g.*, *Sensient Tech. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 n.3 (8th Cir. 2010) (recognizing that the plaintiff had to show "likelihood of confusion" for both its federal and Missouri trademark-infringement claims). Of course, it is ultimately up to the Missouri Supreme Court to decide whether it will. *See Hawkins Chem., Inc. v. Westchester Fire Ins. Co.*, 159 F.3d 348, 352 (8th Cir. 1998).

*Comfort Corp. v. Baxter*, 996 F.3d 925, 936 (8th Cir. 2021) (explaining that initial-interest confusion does not apply when "the relevant average consumers are sophisticated at the level of the careful professional purchasers who were at issue in *Sensient*").

The question is how to instruct juries about it. *See id.* at 938. Here, the district court opted for the following:

> In order to determine whether you may take initial interest confusion into account when assessing likelihood of confusion, you must first decide whether the average Hoffmann Brothers customer is a "sophisticated purchaser" who exercises a high degree of care when making the decision to purchase the particular product or service in question. If you determine that the average Hoffmann Brothers customer is not a sophisticated purchaser, you may then consider the likelihood of initial interest confusion as well as the likelihood of confusion that results in a sale.

The instruction made recovery for initial-interest confusion contingent on the level of sophistication of the average Hoffmann Brothers customer.

We have reservations about whether the presumption in the instruction ought to be conclusive, given how fact-dependent trademark-infringement claims are. *See id.* at 933 (explaining that to assess customer confusion, we "employ[] a list of nonexclusive factors" including "the strength of the owner's mark" and "incidents of actual confusion"); *see also Morissette v. United States*, 342 U.S. 246, 275 (1952) ("A conclusive presumption . . . would prejudge a conclusion which the [factfinder] should reach of its own volition."). But here, it was a correct statement of the law. Since *Sensient*, we have recognized that initial-interest confusion does "not apply" when customers are sophisticated and exercise a "high degree of care in making their purchasing decisions." 613 F.3d at 766; *see Select Comfort Corp.*, 996 F.3d at 938 (allowing the claim to go to a jury only when a "jury question existed as to the issue

-7-

of consumer sophistication"). Whether it should, which is at the heart of Hoffmann Brothers' argument, is a question we leave for another day.[3]

IV.

The district court also allowed the jury to decide whether the settlement agreement had given Tom the right to call his company Hoffmann AC after four years. At trial, he argued that consent was an absolute defense to liability on both the trademark-infringement and unfair-competition claims. Hoffmann Brothers, on the other hand, thought it was for the court to decide as a matter of law. *See Warger v. Shauers*, 721 F.3d 606, 610 (8th Cir. 2013) (reviewing the denial of judgment as a matter of law de novo). Whether it should have depends on the interpretation of a single passage in the settlement agreement, which stated that, "[i]n exchange for [$600,000], Tom agree[d] that for four (4) years after the date of execution of th[e] [a]greement, he w[ould] not use the Hoffmann name within the business name of an HVAC business."

The parties each argue that this language unambiguously favors their position. For Tom and Hoffmann AC, it reflects acquiescence to use of the Hoffmann name after four years. *See Masters v. UHS of Del., Inc.*, 631 F.3d 464, 469 (8th Cir. 2011) (discussing acquiescence); *see also Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 940 (7th Cir. 2016) (same). Hoffmann Brothers, by contrast, interprets it as a four-year ban followed by a return to ordinary trademark protection. *See* 15 U.S.C.

---

[3]One reason is we doubt a different instruction would have made a difference in this case. *See Burry v. Eustis Plumbing & Heating, Inc.*, 243 F.3d 432, 434 (8th Cir. 2001) (concluding that a new trial is necessary only when the instructions "misled the jury or had a probable effect on its verdict" (citation omitted)). The evidence at trial did not focus on customer sophistication, Hoffmann AC never mentioned it or initial-interest confusion in its closing, and there were other reasons the jury may have rejected the claim. *See Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 722 (8th Cir. 2008) (recognizing that a mere "metaphysical possibility" an alleged error affected a verdict is not enough).

§ 1125(a)(1) (providing civil liability for trademark infringement); Mo. Rev. Stat. § 417.056(1) (same). As is often the case, the truth lies somewhere in between.

In Missouri, courts interpret contracts, including settlement agreements, according to their "plain, ordinary, and usual meaning." *Arrowhead Lake Ests. Homeowners Ass'n, Inc. v. Aggarwal*, 624 S.W.3d 165, 167 (Mo. 2021); *see Twehous Excavating Co. v. L.L. Lewis Invs., L.L.C.*, 295 S.W.3d 542, 547 (Mo. Ct. App. 2009). Viewing the passage through this lens, we conclude it is ambiguous because "it is reasonably susceptible of [both] constructions." *Emerick v. Mut. Ben. Life Ins. Co.*, 756 S.W.2d 513, 522 (Mo. 1988); *see Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 846 (Mo. 2012) (explaining that whether a contract is ambiguous is a "legal issue determined by the court").

The ambiguity arises out of what the settlement agreement does not say. Short on specifics, it does not discuss what happens to the Hoffmann name after four years. Nor does it mention trademark or unfair-competition law. One way to reasonably interpret it, given the omissions, is that Tom was free to use the name once four years had passed. Another is that it prohibited Tom from using the name for four years, after which any future right to it would depend on the application of other legal rules. It was up to the jury to figure out which meaning the parties intended. *See Transp. Equip. Rentals, Inc. v. Strandberg*, 392 S.W.2d 319, 323 (Mo. 1965) (recognizing that ambiguous contractual language is "properly submitted" to a jury).

V.

The final loose end is attorney fees. Once again, the settlement agreement takes center stage. It says that, in "any legal action under or arising out of, or to enforce, this [a]greement, the prevailing Party shall be entitled to recover *its* reasonable attorney's fees, costs, and expenses." (Emphasis added). Robert, who won a breach-of-contract counterclaim involving the settlement agreement's non-disparagement clause, believes he should receive them.

-9-

The word "its" stands in his way. A prevailing party only gets "its" attorney fees, but Robert did not have any. Hoffmann Brothers, which did not sign the settlement agreement, paid every cent for him. Without any fees of his own, he has nothing to recover. *See Burns v. Smith*, 303 S.W.3d 505, 513 (Mo. 2010) (holding that courts must enforce clear and unambiguous contracts as written).

## VI.

We accordingly affirm the judgment of the district court.

_____